**WOODMEN OF THE WORLD CAMP NO. 1772 v. GOODMAN et al.**

No. 13650.

Court of Civil Appeals of Texas. Dallas.

Dec. 7, 1945.

Rehearing Denied April 5, 1946.

E. A. Landman, of Athens, for appellants.

Justice, Moore & Justice, of Athens, for appellees.

YOUNG, Justice.

Appellant Society originally sued defendant Goodman and Henderson County for relief by way of mandatory injunction; in trial amendment alternatively claiming damages growing out of the partial razing of a wooden structure at Cross Roads, a community center in precinct 2. Upon trial and jury verdict, judgment was rendered in all respects adverse to plaintiffs who have seasonably appealed.

In July 1914, A.D. Van Deman and others transferred to Henderson County a small

plot of land at above location, under deed conveying full fee simple title along with the following recitals: "Said land donated to Henderson County for the sole purpose of erecting a building thereon that is a two story wooden building first story of said wooden building is to be used by the citizens and people of the Cross Roads community for public gatherings and for a place in which to hold Justice Court. The second story is to be used and occupied solely by the Woodmen of the World Lodge and also by the Woodmen Circle said to (two) last named institutions are to have the use and exclusive control of said second story during the existence of either of said institutions are (or) both at said place. The said first story shall always be used for holding Justice Court of that precinct the same being precinct No. 2 and it shall always be used for public gatherings including religious services or gatherings. The County of Henderson is to put $200.00 to be used in the erection of said building and the attorneys at Athens and the citizens of Cross Roads are expected to pay the remainder for the material and building of said building * * *."

A two-story wooden structure was then erected on the site, and for many years the first floor was used as Justice of the Peace quarters and for other public purposes; second floor by both men and women units of the Society (Woodmen of the World Camp No. 1772 and Woodmen Circle). From the general run of testimony at the trial, efforts were made in the early Thirties to have the Commissioners' Court assist in repairs on the building, which had already become dilapidated, but to no avail. According to Dewey Thornton, last Consul Commander and an individual appellant, no meetings had been held at the place since 1939 or 1940, building having remained open since about such time, Lodge records and paraphernalia gone, no election of officers; stating on cross-examination at the trial:

"Q. Then for the past 3 or 4 years you didn't have a Woodmen meeting out there at Cross Roads at all, did you? A. It moved the meeting place to Malakoff.

"Q. You have one there? A. Yes Sir.

"Q. Then that Woodmen Circle moved away and carried its membership to Malakoff? A. Yes Sir."

Other testimony placed nonuse of said second floor for any purpose at some six to eight years back, during which interval the building was variously described as in an open, abandoned condition. Further evidence was to the effect that after 1940 infrequent lodge meetings had been held at an adjacent school building. In October 1944, pursuant to complaints of community residents that the premises constituted a fire and public hazard, the Commissioners' Court of Henderson County, by order of record, sold the structure to a Mr. Goodman for $100, provided that it be torn down and moved away; the County having long since abandoned use of the lower floor as a Justice courtroom. Before sale to Goodman, the Commissioners had unsuccessfully sought other bids on the property; even proposing a gift of it to appellants, conditioned on a removal, which offer was not accepted.

Work of demolition was in progress when temporary injunction issued, appellants seeking judgment for complete restoration of building upon final hearing; alleging a joint interest in the premises and lot, and a deprivation of lodge hall without their knowledge or consent. On trial to the merits and prior to introduction of evidence, all counsel were advised by the court that mandatory injunction would be refused in event the testimony disclosed that plaintiffs' quarters could not be restored to their original condition; in which case claimants would be entitled to prosecute a further suit for damages; and, to avoid a multiplicity of suits, suggested that the controversy be repled to include said issue of damages. Thereupon, and without objection, plaintiffs pled alternatively for damages in the instant suit. Defense thereto generally was that appellants, having abandoned their use of the property, had no right, title, or interest therein; that the County Commissioners had rightfully ordered the building removed as a public hazard, and that the interest of plaintiffs, if any, was nominal, the building, as scrap material, having a reasonable value of no more than $100. Issue 1, answered by the jury "Yes," reads: "Do you find from a preponderance of the evidence that the plaintiff, Woodmen of the World Center Camp No. 1772, Henderson County, Texas, had abandoned the building in question at and prior to the date of the alleged injury?" Issue 2 on damages was conditionally submitted and not answered.

Since the grant of a mandatory injunction is ordinarily within the sound discretion of the trial court, and will be denied unless the right thereto is clear and compelling, Judge Johnson did not err in re-

quiring plaintiffs to amend and include their alternative legal remedy (damages at law) in one and the same suit. His ruling should be commended, as all rights of the same parties involving a common "res" became susceptible of adjudication in a single action.

Further points of appeal, 1 and 3 (5 not briefed), relate to alleged errors of procedure and will be later noted. Point 4 presents their primary complaint, and is quoted: "Where a record discloses a deed that shows the joint ownership of property, and there is no evidence to contradict such joint ownership then the question of abandonment can not terminate the ownership of one joint owner, and under such a record the court is without legal authority to determine the question of abandonment, and there is no issue to be legally submitted to a jury." Undoubtedly, under the settled definition of "realty fixture," 19 Tex.Jur., sec. 4, p. 707, the building in question became property of Henderson County subject to reservations of deed. This is so, irrespective of extent of contributions to initial construction made by appellant Society or other donors; the rights of Woodmen Lodge and Circle being expressly restricted to "the use and exclusive control of said second story during existence of either institution or both at said place." Appellants claim that said deed recitals together with their considerable investment of money in the original 1914 improvements, resulted in a "joint ownership of property" as between them and Henderson County; the position of appellees, on the other hand, being that appellants were mere licensees, as opposed to their claim of an easement or interest in the improved realty. Whether, under a fair construction of the Van Deman deed, these lodge members became mere licensees in contrast to holding easement rights (15 Tex. Jur., sec. 8, p. 775; Chicago, R. I. & G. Ry. Co. v. Johnson, Tex.Civ.App., 156 S.W. 253, writ refused), we find it unnecessary to determine. Even if easement holders, such rights of appellants extended to the second floor of the building only, subject to abandonment by cessation of the defined purpose or occupancy. "There is a well-established rule that an easement may be terminated by the completion of the purpose for which it was granted, inasmuch as the reason for, and necessity of, the servitude are at an end. Thus, if an easement is granted for a particular purpose only, the right continues while the dominant tenement is used for that purpose, but ceases when the specified use ceases." 17 Am.Jur., sec. 137, p. 1023.

We conclude that whether the building in question had been abandoned or not was a fact issue for the jury under all circumstances of this record; Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922; and disposed of by them adversely to appellants' claim of a present right; the term "abandonment" generally signifying a "relinquishment of the possession of a thing by the owner with the intention of terminating his ownership, but without vesting it in any one else." Shahan v. Northern Texas Traction Co., Tex.Civ.App., 266 S.W. 850, 852; Pearson v. Black, Tex.Civ.App., 120 S.W.2d 1075; 1 C.J.S., Abandonment, § 1, p. 4.

Further points of error are predicated upon bills of exception, No. 1 being to the effect that prior to introduction of evidence the trial court had announced that no evidence would be received showing amount of contributions of various parties toward the original 1914 improvements; plaintiffs expecting to show (according to the bill) "that Henderson County paid Two Hundred Dollars of the consideration; that private citizens paid not exceeding Seventy Five Dollars, and that the Woodmen of the World paid more than One Thousand Dollars of the cost; that they had a membership of more than one hundred members and each member paid a monthly due of twenty-five cents per member for more than three years, and that the money went into the payment of the building." However, the bill, as qualified by the trial judge, discloses that at no time after above in limine discussion and during progress of trial, was testimony offered bearing on consideration or purposes expressed in said deed to Henderson County; the court not being called upon to rule on admissibility of any such evidence. In the situation thus presented no tangible ground of error is shown to exist.

Likewise bill No. 3 relates to exclusion from the jury of a conversation between Thornton, the witness, and Gordon Allen, a lodge member, prior to filing of suit, concerning needed repairs to the lodge hall. The court qualified said bill, viz.: "The objection made to the testimony of the witness, Dewey Thornton, on this point, was that said conversation was a private conversation and not at the Woodmen Hall or any regular organized meeting, and was hearsay." Under well-recognized rules of evidence the ruling in question was correct.

All assignments and points of error, upon examination, are deemed without merit; necessitating an affirmance of the judgment appealed from.

Affirmed.