KEARNEY & SON, Appellant,

v.

Ruby K. FANCHER et al., Appellees.

No. 16723.

Court of Civil Appeals of Texas.

Fort Worth.

April 1, 1966.

Rehearing Denied April 29, 1966.

Storey, Armstrong & Steger and John K. DeLay, Jr., Dallas, for appellant.

Biggers, Baker, Lloyd & Carver and Monty C. Barber, Dallas, for appellees.

LANGDON, Justice.

This case involves the construction of an express easement granted by deed, involving the use of a railroad switch track and grounds. When it was no longer physically possible to bring railway cars onto the property the appellant in June, 1962, constructed a fence along its property line beside that of the appellees' obstructing the latter's use of the strip involved.

Appellees filed this suit seeking to enjoin the appellant from fencing its (appellant's) property and in any way obstructing appellees' use of an 18 foot strip of land, being 9 feet on each side of the center line of the railroad switch track paralleling their property line. In the original petition and application for injunction the appellees alleged that the easement granted in the deed of April 25, 1935, was for the general purposes of access from Logan Street to appellees' concrete loading dock attached to their building, and parallel to the switch track. That by virtue of such express grant they were entitled to use the railroad switch track and grounds as a driveway for trucks coming from Logan Street. Alternatively they claimed an implied easement or one by estoppel.

By answer and cross-action appellant denied that the easement granted in the deed of April 25, 1935, was a general-purpose easement of access. It asserted that the purpose of the easement granted by and reserved in the Keller (common source of title) deeds was limited to railroad use, which use had totally ceased and become impossible, thereby terminating the easement and appellees' right to use appellant's property. It prayed that title to its land be quieted.

Appellees and appellant filed motions for summary judgment each asserting that judgment should be rendered in their or its favor as a matter of law. On June 10, 1965, the court entered judgment granting appellees' motion, holding that appellees were entitled to an easement of access over and across the strip of appellant's property which was described by metes and bounds. In general the strip may be described as being 13.5 feet wide and approximately 120 feet long lying north of and parallel with the line between the property of appellant and appellees. (See Exhibit A, the plat from which the metes and bounds description of the strip was obtained.)

In order to more clearly illustrate the location and relationship of the railway tracks, streets, loading dock and the property covered by the various conveyances, references will be made to a survey marked Exhibit B which follows Exhibit A.

Exhibit "A"

Exhibit "B"

The appellant contends that the trial court erred in granting summary judgment for appellees, holding that (1) appellees are entitled to a permanent easement of access over and across its property; (2) that there is an existing, permanent easement in favor of appellees' property over and across appellant's property by virtue of (a) the grant in the deed dated April 25, 1935, to appellees' predecessor-in-title and (b) an agreement dated July 11, 1955, between appellant and appellees; and in failing to render

summary judgment for appellant holding that the "easement or right-of-way and privilege to use the railroad switch track and grounds" had terminated as a matter of law.

Prior to April 25, 1935, P. B. Keller owned the property now owned by appellant Kearney & Son and appellee Fancher. By warranty deed dated April 25, 1935, P. B. Keller et ux. conveyed to W. B. Connell (appellee Fancher's predecessor-in-title) the land now owned by appellee Fancher and leased to appellee, Chemical Engineering Corporation. (Tract "F"—Exhibits A and B.) This deed, after describing the property conveyed, states: "Together with an easement or right-of-way and privilege to use the railroad switch track and grounds along the north and the northeast side of the property hereby conveyed; grantors reserving however the right to use said switch property and track to serve other property owned by grantors adjacent thereto, it being specially agreed and understood that the grantee herein, his heirs and assigns, shall be obligated to keep said switch property in repair adjacent to and along the property hereby conveyed, and that grantors, their heirs and their assigns, will keep that portion of said switch track and property in proper repair to service said property adjacent and adjoining property owned by said grantors."

Thereafter, by warranty deed dated May 14, 1936, P. B. Keller et ux. conveyed to Dixie Motor Coach Corporation and Sunshine Bus Lines, Inc., the tract of land, adjoining appellee Fancher's property on the north, upon which the above mentioned railroad switch tract is situated. (Tract "K 1" —Exhibit B.) This deed contains the following pertinent language: " * * * together with all rights and interest in switch track located on said above tract of land and right to use same as now established to connection of said switch track to its connection with Cotton Belt Railway.

"Grantors * * * have heretofore deeded to W. B. Connell the tract of land lying South of said Railroad switch with right to use said switch track, * * * which easement and privilege to use said track is hereby excepted from this conveyance.

"It is expressly understood that the switch track located on the track of land hereby conveyed, is included in this conveyance, subject to the rights heretofore conveyed to W. B. Connell, as hereinabove provided, but that the switch track located between the S. B. line of the above described tract of land, hereby conveyed and the Cotton Belt Railway, is not conveyed hereby, but only the right to use thereof, * * *."

By deed dated October 2, 1936, P. B. Keller et ux. conveyed to Dixie Motor Coach Corporation and Sunshine Bus Lines, Inc., a tract (Tract "K 2"—Exhibit B) situated to the south of the land previously conveyed by the May 14, 1936, deed, which the switch track crossed in getting to its connection with the Cotton Belt Railway.

This deed stated: "Grantors reserve an easement where the present switch track crosses the above property also the right to use and maintain said track for their other property and those to whom he has heretofore conveyed an interest in said track."

By mesne conveyance, the two tracts (Tracts "K 1" and "K 2"—Exhibit B) owned by Dixie Motor Coach Corporation were acquired by Bowie Gasoline Company, which in turn conveyed by warranty deed dated January 11, 1955, to appellant, Kearney & Son, the property it presently owns. This deed to appellant stated: "Together with all rights and interest in switch track located on the above tract of land and right to use same as now established to connection of said track to its connection with Cotton Belt Ry. * * * P. B. Keller and wife, conveyed to W. B. Connell, the tract of land lying South of the railroad switch above referred to, and * * * conveyed to Dixie Motor Coach Corp. and Sunshine Bus Lines, Inc. a tract which is a part of the tract herein conveyed, and in said deed reserved an easement to use and maintain

the said switch track and such easement and privileges granted to Connell and those retained by Keller and wife, are hereby excepted from this conveyance."

At the time of the deeds from P. B. Keller in 1935 and 1936 the railroad switch track was in use and the owners of the respective tracts used such railroad switch track for the transportation of goods and merchandise to their respective properties. This use continued up to and subsequent to the time appellant acquired its property on January 11, 1955, for on January 15, 1955, Kearney & Son entered into a Standard Industrial Track Agreement with the St. Louis Southwestern Railroad Company, covering the track situated north of the property owned by appellee Fancher and thereafter received several shipments of goods by railroad freight cars brought onto appellant's property over such switch track.

A dispute arose between appellant and appellees, regarding the use of the subject easement by appellees, who were driving trucks over and across appellant's property situated to the north of the switch track. The controversy between the appellant and appellees was settled by their signing of an instrument or agreement dated July 11, 1955, the pertinent portions reading as follows: "(a) That Mrs. Ruby K. Fancher, her heirs and representatives, assigns and tenants, shall have and retain the easement or right-of-way and privilege to use the railroad switch track and grounds along the North and Northeast side paralleling the above described property with a width of eighteen (18) feet, being nine (9) feet on each side of the center line of the railroad switch track.

"(b) That any use of the switch track and grounds, in excess of said width of eighteen (18) feet, has been, is, and if used in the future will be premissive only, and shall not be the basis of any prescriptive right or rights.

"(c) That each party shall have and retain any and all such rights and privileges as each shall have and possess by virtue of the respective conveyances to each.

"(d) Kearney & Son a Corporation agrees to remove that portion of its fence and obstruction between said properties and along Logan Street for a width of nine (9) feet on each side of the center line of the spur track.

"(e) That Kearney & Son a Corporation, if it so desires, may erect loading platforms, houses, structures and fences along and parellel to the North rail of said spur track but at a distance of not less than nine (9) feet from the center line of said spur track. It is understood, however, that such fence, platform and structure is not upon the property line of the property owned by Kearney & Son a Corporation but is for the purpose of preventing encroachment upon its property.

"(f) It is agreed and understood that Kearney & Son a Corporation may place and maintain a sign or notice along the easement right-of-way, but in such manner as not to interfere with the use thereon as such, stating or designating that same is private property and not a public thoroughfare."

Under the record it is undisputed that in approximately 1959 and 1960, the Blue Diamond Company acquired the property (Tract "B"—Exhibit B) situated to the east and south of appellant's property. The switch track on appellant's property crossed the Blue Diamond property in getting to its connection with the Cotton Belt Railroad track. Upon acquiring its property, the Blue Diamond notified appellant that it was closing off such connecting switch track crossing the property, and that it would no longer allow railroad cars to cross its property. Thereafter, Blue Diamond did take up the track lying immediately to the south of appellant's property line and constructed a fence across such switch track, making it impossible for railroad cars to cross the Blue Diamond property. This action effectively cut off all railroad car access to the

switch track situated on appellant's property.

On October 19, 1961, appellant received notice from the St. Louis Southwestern Railway that, since the Railway had not received any shipments on the track for a number of years, it elected to terminate the Industrial Track Agreement effective November 17, 1961. The Railroad later informed appellant that it could make such disposition of the track as it desired, since it was owned by appellant and was situated on its property.

The basic question involves the construction of the language in the deed from Keller to Connell. "The rules regarding the interpretation of deeds are, in general, equally applicable for the construction of easements. Thus, the intention of the parties is of primary importance, and, in arriving at the intention, all provisions of the instrument will be considered and given effect if possible from a fair construction of the entire instrument, considering the effect of the various paragraphs on each other." 21 Tex.Jur.2d 133, § 14, "Easements."

This rule of construction is similarly stated in 17A Am.Jur. 641, § 30, "Easements", and 28 C.J.S. Easements § 26, p. 680. In determining the extent of an expressly granted easement, the following rules stated in 21 Tex.Jur.2d 167, § 38, "Easements", are applicable: "Where an easement exists by an express grant, its use must be determined by the terms of the grant considered in the light of surrounding circumstances. Where the terms are specific, they are decisive of the limits of the use, so that the use may not be enlarged beyond that warranted by the grant. Nothing passes by implication as incidental to a grant of an easement except what is reasonably necessary to its fair enjoyment."

From an examination of the provisions of the April 25, 1935 deed from Keller to Connell in the light of the above rules of construction, it appears to us that the nature of the easement with regard to use is specifically stated. The grantee is given an easement "to use the railroad switch track and grounds." Since the terms of the grant are specific, the limits of the use may not be enlarged. Had the grantor intended to give the grantee an easement of access over and across appellant's property to the street, by whatever means appellees desired, he would not have provided an easement of access to the street by such indirect means.

Again under the rules of construction in examining the grant in the light of the "surrounding circumstances" it can be readily seen from an examination of Exhibits A and B that since the appellees' property abuts on Logan and Myrtle Streets and was readily accessible to both there was no necessity to burden appellant's property with an easement for ingress and egress of trucks and other vehicles. The only purpose of the easement therefore was for access to the railway track and not an unrestricted right of ingress and egress by trucks over the strip in question to Logan Street on the west.

The natural and reasonable interpretation of the grant of an easement to use a "railroad switch track and grounds" is the right to go onto the switch track property to load and unload railroad cars sitting on such switch track. To reasonably enjoy such easement, the right to bring the railroad cars onto the specific switch property is necessarily implied as incidental to the grant of an easement. This is the normal use one would make of a switch track and the grounds upon which it was situated. It was not as a thoroughfare for trucks and other vehicles. The granting provision does not expressly, or by implication, give the grantee a right to use the railroad switch track and grounds for anything other than such normal use. It does not expressly or by implication give to grantee a right to use the switch track and grounds for roadway purposes or as a means of access to grantee's property, other than by railroad cars coming in over the switch track nor

does it give to grantee an easement over and across appellant's property to get to the street.

The grantor in the 1935 deed did not enlarge the initial grant. His subsequent language consistently indicates that his intent was to grant nothing more than an easement "to use the railroad switch track and grounds" as such would normally be used. Following such initial grant, the grantor makes reference only to "said switch property and track," "said switch property," and "said switch track and property."

The language of the two deeds from P. B. Keller to Dixie Motor Coach in 1936 (conveying the property now owned by appellant) is consistent with that of the April 25, 1935, deed. In the deed of May 14, 1936 conveying to Dixie Motor Coach the property immediately adjoining appellees' track on the north, the grantor specifically gave the grantee all rights and interest in the switch track located on the property and the right to use such switch track as then established to connect with the Cotton Belt Railway. The grantor then referenced his prior deed to Connell, stating that the tract lying to the south of the switch track had been deeded to Connell "with right to use said switch track" and that such "easement and privilege to use said track" was excepted from the conveyance to Dixie Motor Coach. P. B. Keller referred to the right granted in his prior deed as only one to use said switch track. In the deed of October 2, 1936, from Keller to Dixie Motor Coach, the grantor makes reference to "those to whom he has heretofore conveyed an interest in said track."

The language of these three deeds out of the common grantor, is clear and consistent to the effect that Connell was granted only a right or easement to use the railroad switch track which connected with the Cotton Belt Railway and not as an easement or privilege to use the land upon which the switch track was situated for any other purpose which might be desired.

The fact that the deed to Connell used the words "easement or right-of-way and privilege to use the railroad switch track *and grounds*" (emphasis added) does not change the scope of the grant from one giving the right to use a switch track only, as it would normally be used, to one giving the right to use the grounds for the purpose of access to grantee's property. The use of the words "and grounds" adds nothing to the grant, but merely makes it clear that the holder of the easement to use the switch track also has the right to use the grounds upon which the switch track is situated in connection with the use of the switch track. It would be difficult, if not impossible, to use a switch track, bringing railroad cars in over such track to load and unload, without also using the ground upon which the track was situated. Such right of use would be, and is necessarily, implied in the grant of the right to use the switch track. By making clear that such auxiliary right exists, the grantor did not enlarge the scope and purpose of the grant of the easement to one of ingress and egress over such grounds, other than by railroad cars and the trucks or other vehicles used to load and unload such railroad cars.

The appellees contend that, since the grant of the easement did not specifically contain language to the effect that such easement should be used for railroad purposes only, they have an unrestricted right to use such easements. The contention might be valid if the 1935 deed had broadly granted "an easement over and across" the land adjoining the conveyed property, but it did not do so. Instead, the grantor specifically granted an easement to use the railroad switch track and grounds. It would be illogical to hold that, by granting an easement to use a railroad switch track, without specifically stating that such switch track was to be used "for railroad purposes only," the grantor conveyed an easement over the switch track for truck driveway purposes. If such an interpretation were correct, then the typical power line or pipe-

line easement, granted for the purpose of constructing and maintaining a power line or pipeline across specified property, could be used for any other purpose, unless the grantor by specific language negated all other purposes. Such is clearly not the law. See Lange, Texas Practice, Vol. 4, Land Titles, p. 173, § 384.

■ The grant of "an easement" across a designated piece of property with no statement of purpose or use gives the grantee latitude in the uses to which he could put such property, provided such uses are reasonable. Such is not true, however, where the easement, as here, is granted for a particular, designated use or purpose. In the latter situation, the grantee is restricted to such stated purpose, without necessity for specific negation of all other possible uses which could be made of the property. As stated in 17A Am.Jur. 723, § 115, "Easements": "* * * where the parties to an instrument granting, reserving or covenanting for an easement specifically state the uses or purposes for which it is created, the instrument is, of course, limited to such uses and cannot be enlarged by any change in the use or character of the dominant tenement."

■ To hold that a permanent easement of access across appellant's property exists by virtue of the grant in the deed violates the express language and terms of the grant and enlarges the use of the appellant's property from that stated in the express grant. Because appellees had driven trucks from the street over the railroad switch track situated on appellant's property from time to time does not fix or determine the purpose or use contemplated by the grant. The actual language of the grant controls, for the rule is: "Where an easement is created by express grant or reservation, the extent of the right acquired depends not upon user, as in the case of easements created by prescription, * * * but upon the terms of the grant or reservation properly construed." 28 C.J.S. Easements § 75, p. 752.

Such rule is similarly stated in 21 Tex. Jur.2d 165, § 37, "Easements", as follows: "The extent of a prescriptive easement is determined by the user, but this rule is not applicable where easements are created by conveyance, for the extent of such easements depends on the proper construction of the grant."

On the proposition of enlarging by prescription an easement created by conveyance the appellees, acknowledging that no Texas cases have been found exactly in point, cite an annotation in 110 A.L.R. 915 and specifically the following statement at page 916: "* * * where an easement is granted for use in a specified manner or for a specified purpose, an open and continuous use thereof, under a claim of right, for the prescriptive period for purposes or in a manner beyond the scope of the grant, will create an easement of the larger scope by prescription, * * *."

The same text also states that a comprehensive search has revealed comparatively few cases involving the point and that in a majority of these the enlarged easement was held in fact not to arise because of a lack of the elements necessary to create it.

■ We are of the further opinion that appellees did not acquire nor are they entitled to a permanent easement over and across appellant's property for the purpose of access to appellees' building by virtue of the July 11, 1955 agreement, provisions of which are above set out.

The record shows that, at the time of the agreement, the railroad switch track was still being used to bring railroad freight cars onto appellant's property, and that such use continued for a period of time thereafter. As of that time, appellant's property, purchased some six months prior, was still burdened by the easement to use the railroad switch track as one would normally contemplate using a switch track. At that time appellant was in no position to petition to a court to declare the easement terminat-

ed and to remove the cloud on its title. Thus, appellant's execution of the agreement defining the extent of area comprising "the switch track and grounds" is not inconsistent with its later assertion that the easement had terminated because the use of the switch track for its normal, contemplated purposes had ceased and had become impossible.

The 18 foot width stipulated in such agreement was determined by measurement from the center of the railroad spur track— that is, 9 feet on either side. This width is standard and is the minimum required for railroad switch track clearance. The agreement further specified that the appellant could erect loading platforms along the north rail of the spur track, again at a distance of not less than 9 feet from the center line of such track. The agreement reflects that the parties contemplated use of such railway switch track for normal railroad uses. The switch track could and was still being used for normal railroad purposes and appellant at that time recognized that appellees still had a right to use the railroad switch track under the 1935 deed. The agreement merely reaffirmed the existence of such easement and that such right of use existed as of the time thereof. The agreement did not expressly or by implication give the appellees rights greater than those originally granted or extend the easement to use the switch track indefinitely in the future even though its use for railroad purposes became impossible. The agreement emphasizes that the right of appellees to use the switch property was derived from the deed of April 25, 1935. Other than specifically defining and limiting the use of the railroad switch track and grounds to 9 feet on each side of the center line of the railroad switch track, the agreement did nothing more than reaffirm the existence of the rights each party had by virtue of the respective conveyances to each. It specifically negated the existence of any prescriptive rights or the creation thereof. The appellant did not by such agreement acknowledge or agree that the easement to use

the railroad switch track and grounds granted was an easement of access to the street by trucks. Clearly, there are no words of grant or conveyance in the agreement. To the contrary it is specified in paragraph "(c)" of the agreement that the rights of the respective parties by virtue of the prior deeds remained unchanged and were in no way enlarged. The fact that appellant, while the switch track remained usable for railroad purposes, tolerated the driving of trucks across the switch track should not prevent or estop appellant from now attempting to terminate any unauthorized use of the switch track property and appellant's adjacent land.

The record reflects that the purpose for which the easement was granted has ceased to exist. Because of the cessation of, and impossibility of, use in accordance with the specific purpose, granted, the easement has now terminated and appellant's title should be cleared of the cloud cast by the prior grant of such easement. The rule is stated in Shaw v. Williams, 332 S.W.2d 797, p. 800 (Eastland Civ.App., 1960, no writ hist.), as follows: " 'An easement granted for a particular purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment.' 28 C.J.S. Easements § 54, p. 718."

In Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849 (1950), the Supreme Court stated: "The Commission of Appeals in the case of Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74, 77 (opinion adopted by the Supreme Court), said: 'It appears to be well-settled that an abandonment, even of an easement acquired by purchase, occurs when the use for which property is dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object of the use for which the property is dedicated wholly fails.' " See also 21 Tex.Jur.2d 179, § 50, "Easements"; 28 C.J.S. Easements § 54, p. 718; Woodmen of the World Camp No. 1772 v. Goodman, 193 S.W.2d 739 (Dallas Civ.App., 1945, no

writ hist.); Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922 (Comm.App., 1942, opinion adopted).

If this had been a general-purpose, access easement, such purpose or use is still possible, and the easement has not terminated. The easement granted here, however, was not one of access over appellant's property to a street situated to the west. It was an easement to use a switch track. It provided access for railroad cars used by appellees, to the Cotton Belt Railroad Line lying east of appellees' property. In our opinion the easement has terminated because it would be illogical to say that an easement to use a switch track to gain access to railroad cars sitting on a switch track for loading does not terminate when it has become physically impossible for railroad cars to come onto such track.

Because an easement, granted for a limited and specific purpose, has continued to exist for a long period of years is no basis for subjecting appellant's property to the burdens of completely different uses which were not originally granted nor contemplated. Had the original grantor intended to grant an easement for driveway purposes or for ingress and egress to appellees' property by trucks or other vehicles, he could have provided therefor in the original grant, rather than using language limiting such use. The original grantor gave only a right to use the railroad switch track so that freight cars from the nearby railroad might be brought onto such track in order to serve both appellees' and appellant's property. This was the scope and limit of the easement granted. Since such use is now impossible the easement has terminated and a new and different use cannot be substituted therefor.

The judgment of the trial court is in all things reversed and judgment here rendered for appellant, declaring said easement to be terminated and clearing title to appellant's property of any cloud thereon by virtue of such easement.

Reversed and rendered.