TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00380-CV





R. Stephen McNally, Appellant



v.



Joseph Guevara and Maria Trevino, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 95-09666, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







DISSENTING OPINION






 I respectfully dissent.

 Appellant R. Stephen McNally sued Joseph Guevara and Maria Trevino, appellees,
seeking a declaratory judgment that he possessed an easement permitting him and his tenants to
park on a portion of appellees' lot, which adjoins his property. Appellees filed a counterclaim
seeking declaratory relief and attorney's fees. The trial court rendered summary judgment for
appellees, but the order granting appellees' motion did not address the issue of attorney's fees. 
McNally perfected this appeal, seeking first to determine if the summary judgment is a final,
appealable judgment. If it is not, McNally asks to have his own appeal dismissed. If it is a final
judgment, he complains that the trial court erred in declaring that the easement document does not
permit him to park on the servient estate.

 The majority affirms. I would dismiss the appeal for lack of jurisdiction. If,
however, this Court does have jurisdiction, I would reverse the judgment and remand the cause.

 In November 1979, McNally purchased property at 602 Elmwood in Austin for use
as multiple-tenant housing. The purchase included a separate easement "for driveway purposes"
over a portion of the adjacent property at 600 Elmwood. That adjoining property at 600
Elmwood, the servient estate of McNally's easement, is now owned by appellees. The diagram
above, though not to scale, gives a rough idea of the layout of the two properties and the
easement. The practice since the purchase of the property has been for McNally's tenants to park
their cars in the easement area. Indeed, because of the steep grade at the front of the dominant
estate, there is no direct access from the street to the front of 602 Elmwood. In order to have
adequate parking, McNally and his tenants must make use of the driveway easement.

 The easement in question was originally created in 1946, when the owner of the
servient estate, appellees' predecessor-in-title, deeded McNally's predecessor-in-title a written 
easement "for driveway purposes" for a recited consideration of $750. The easement described
in the deed lies across the back of the servient estate. Containing approximately 971 square feet,
the easement is 18.5 feet wide and crosses the entire lot, which is 52.5 feet in width.

 With this easement, the owner of the dominant estate used 602 Elmwood as a
boarding house and ultimately as group housing for a number of students. The student tenants
routinely parked in the deeded easement across the servient estate and were doing so at the time
the subsequent purchasers, Wilhite and Smith, a house renovation and resale partnership, bought
the dominant estate in the late 1970s. Wilhite and Smith also acquired the neighboring property,
600 Elmwood, which was the servient estate for the above easement. Although it was not
immediately realized, their ownership of both the 600 and 602 Elmwood properties extinguished
the easement by merging the estates in common ownership. See Tirado v. Tirado, 357 S.W.2d
468, 473-74 (Tex. Civ. App.--Texarkana 1962, writ dism'd). Nevertheless, Wilhite and Smith
continued to use the driveway behind 600 Elmwood as a parking area for 602 Elmwood.

 The renovation partnership sold 602 Elmwood to Dr. John Bateman in 1978, but
the partners retained 600 Elmwood for the time being. Even though the driveway easement no
longer existed at the time of Bateman's purchase, the parties involved understood the purchase of
the property to include the right to park in the driveway behind 600 Elmwood. It was not until
several months later, when they found a potential buyer for the 600 Elmwood property, that
Wilhite and Smith realized that the 1946 easement had been merged out of existence. Faced with
this dilemma, they prepared and signed a new easement. This 1979 deed used exactly the same
wording--"for driveway purposes"--that the 1946 easement deed had used. Consequently, the
driveway continued to be used for the purpose of parking as well as a means of ingress and egress;
Wilhite and Smith, still owning the servient estate, respected the dominant owner's right to park
in the driveway in accordance with their agreement.

 In 1992, appellees bought the property at 600 Elmwood. McNally's suit alleges
that, despite the long history of 602 Elmwood residents' parking on the driveway easement,
appellees have attempted to interfere with his parking rights by erecting a "no parking" sign,
threatening to tow his tenants' automobiles, and telling him that he and his tenants have no right
to park on the easement. In response, McNally filed this suit to obtain a declaratory judgment
(and injunctive relief if necessary) that he and his tenants at 602 Elmwood have the right to park
on the driveway easement. McNally claimed a right to park on the driveway easement under the
express terms of the driveway easement and, alternatively, that he had acquired a prescriptive
easement to park in the driveway easement area. Appellees counterclaimed, requesting the trial
court to declare that the driveway easement was for ingress and egress only and did not include
any right to park on the easement; appellees' counterclaim also expressly sought attorney's fees. 
Appellees filed a motion for summary judgment. The trial court granted appellees' motion and
rendered summary judgment declaring that the easement "for driveway purposes" did not include
the right to park in the easement area. Although the order granting summary judgment did not
address appellees' request for attorney's fees, McNally perfected this appeal out of an abundance
of caution.


I. Jurisdiction

 In his first point of error, McNally requests this Court to determine whether the
summary judgment is interlocutory and to dismiss the appeal if we find the judgment not to be
final. A court of appeals has jurisdiction to consider an appeal only if the judgment is final. 
Mafrige v. Ross, 866 S.W.2d 590, 591 (Tex. 1993); Cherokee Water Co. v. Ross, 698 S.W.2d
363, 365 (Tex. 1985). Assumption of appellate jurisdiction over an interlocutory order when not
expressly authorized by statute or rule is fundamental error, which results in the dismissal of the
appeal. New York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 679 (Tex. 1990).

 McNally argues in part that the summary judgment is not final and appealable
because it fails to dispose of appellees' claim for attorney's fees. In that regard, McNally points
out that the judgment does not contain a "Mother Hubbard" clause or its equivalent. (1) Because the
order does not contain a Mother Hubbard clause, it leaves the claim for attorney's fees
unadjudicated.

 In order to be a final, appealable summary judgment, an order granting summary
judgment must dispose of all the parties and all the issues before the court. Mafrige, 866 S.W.2d
at 591. If a summary judgment appears to be final, as evidenced by the inclusion of language
disposing of all claims and parties, it should be treated as final for purposes of appeal. Inglish v.
Union State Bank, 945 S.W.2d 810, 811 (Tex. 1997); Mafrige, 866 S.W.2d at 592. When the
order contains conflicting indications, finality is to be judged by the trial court's intent as
discerned from the language of the decree, the record as a whole, and, occasionally, the parties'
conduct. Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 277 (Tex. 1996). If the order
does not dispose of all issues and all parties, it is interlocutory and not appealable absent a
severance. Mafrige, 866 S.W.2d at 591. In the context of a summary judgment, there is no
presumption that the judgment was intended to dispose of all parties and issues. Teer v.
Duddlesten, 664 S.W.2d 702, 704 (Tex. 1984).

 In the present case, the relevant order fails to dispose of all issues and parties before
the court and, therefore, is a non-appealable partial summary judgment. First, the order granting
summary judgment does not contain a Mother Hubbard clause or an acceptable equivalent. In
their counterclaim, appellees not only sought declaratory relief that the easement language
excludes parking on the driveway easement, but also expressly requested attorney's fees. 
Appellees' motion for summary judgment, however, referred only to the easement claim and did
not mention appellees' claim for attorney's fees. The summary judgment did not dispose of
appellees' claim for attorney's fees and, therefore, did not dispose of that portion of appellees'
counterclaim. Although the order recited that appellees' motion should be "in all things granted,"
the present context limits that language to the claims asserted in the motion. Because the motion
did not request any award of attorney's fees (which the counterclaim sought), the recitation in the
order that the motion was "in all things granted" did not address that claim. Accordingly, the
order was interlocutory. See Harris County Appraisal Dist. v. Johnson, 889 S.W.2d 531, 532-33
(Tex. App.--Houston [14th Dist.] 1994, no writ) ("[B]ecause [appellees'] claim for attorney's fees
was not expressly presented to the court in the motion for summary judgment, the order granting
the motion does not dispose of all claims asserted in the Original Petition and is therefore
interlocutory."); cf. Hood v. Amarillo Nat'l Bank, 815 S.W.2d 545, 547 (Tex. 1991) (summary
judgment interlocutory where trial court expressly reserved question of attorney's fees).

 Appellees assert in the alternative that they waived or abandoned their claim for
attorney's fees by omitting it from their motion for summary judgment. They contend the
omission of the pleaded claim from the motion functioned as a waiver, effectively taking it out of
the case, so that the resulting summary judgment was final. This argument is without merit. The
Texas Supreme Court views a claim for attorney's fees omitted from a motion for summary
judgment as still pending, so that a summary judgment granting the motion is interlocutory and
nonappealable. See New York Underwriters, 799 S.W.2d at 678-79 ("In the absence of a special
statute making an interlocutory order appealable, a judgment must dispose of all issues and parties
in the case, including those presented by counterclaim or cross action, to be final and
appealable."). Finally, Rule 166a expressly states that claims not adjudicated on the motion for
summary judgment are preserved for disposition by the trial court after resolution of the motion
for summary judgment. Tex. R. Civ. P. 166a(e). Therefore, the omission of a claim from a
motion for summary judgment is not a waiver of that claim.

 When claims or parties are not adjudicated in an order, a final judgment can be
achieved only by severance, dismissal, or nonsuit of the omitted claims or parties. See Farmer
v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex. 1995) (appellate timetable begins to run only
upon signing of written order severing, dismissing, or nonsuiting unadjudicated claims or parties). 
A severance, dismissal, or nonsuit requires affirmative action taken by the proponent and cannot
finalize an interlocutory judgment until a signed, written order of the court severs or dismisses the
unadjudicated claims or parties. Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 510 (Tex.
1995). Despite appellees' assertions on appeal, their claim for attorney's fees was not waived by
its mere omission from their motion for summary judgment, and the record does not reflect that
appellees took any action in the trial court to effect severance or dismissal of that claim. The
order granting summary judgment is not a final judgment. Accordingly, I would dismiss the
appeal for lack of jurisdiction.


II. Merits

 Moreover, even if we are permitted to address the merits of this appeal, I disagree
with the majority's affirmance of the judgment. In his third point of error, McNally contends the
trial court erred in granting summary judgment on the basis that "for driveway purposes" in an
express easement absolutely excludes parking. McNally claims that, considering the facts and
surrounding circumstances at the time of the grant, the language of the easement is ambiguous,
thereby rendering summary judgment inappropriate. I agree.

 The trial court concluded that McNally's easement is unambiguous because this
Court in Colborn v. Bailey, 408 S.W.2d 327 (Tex. Civ. App.--Austin 1966, no writ), construed
the phrase "for driveway purposes" in an easement to exclude parking. On that basis, the trial
court ruled that it was not permitted to look into the "other facts and circumstances regarding the
parties' intent." This conclusion is erroneous. While this Court held in Colborn that the easement
in question did not include parking, that holding was based on the particular facts of the case. 
Indeed, our opinion quoted the rule that "[i]n determining the scope of a grant, the language used,
the situation of the parties, the purposes of the grant and the nature of the subject matter, may all
be considered." Colborn, 408 S.W.2d at 329 (quoting Baer v. Dallas Theater Ctr., 330 S.W.2d
214, 219 (Tex. Civ. App.--Waco 1959, writ ref'd n.r.e.)). Other cases have followed the
Colborn  court's approach to construing easements. See Kearney & Son v. Fancher, 401 S.W.2d
897 (Tex. Civ. App.--Fort Worth 1966, writ ref'd n.r.e.); see also Gerstner v. Wilhelm, 584
S.W.2d 955 (Tex. Civ. App.--Austin 1979, writ dismissed w.o.j.). Accordingly, Colborn does
not support the majority's proposition that an easement "for driveway purposes" can never include
parking.

 In general, easements are interpreted in accordance with the rules applicable to
deeds and other written instruments. Armstrong v. Skelly Oil Co., 81 S.W.2d 735, 736 (Tex. Civ.
App.--Amarillo 1935, writ ref'd); Phillips Pipe Line Co. v. Clear Creek Properties, Inc., 553
S.W.2d 389, 391 (Tex. Civ. App.--Austin 1977, writ ref'd n.r.e.). Therefore, the intention of
the parties is of primary importance. Kearney, 401 S.W.2d at 903. Where an easement exists by
an express grant, its use must be determined by the terms of the grant considered in the light of
surrounding circumstances. Id.

 These rules of deed interpretation are virtually identical to those for construing
contracts. In fact, when reciting rules of construction relating to deed interpretation, courts often
cite to contract cases. See Hall v. Lone Star Gas Co., 954 S.W.2d 174, 176 (Tex. App.--Austin
1997, pet. denied); Stark v. Morgan, 602 S.W.2d 298, 302-03 (Tex. Civ. App.--Dallas 1980,
writ ref'd n.r.e.); Kuehn v. Wishard, 452 S.W.2d 5, 9 (Tex. Civ. App.--Houston [14th Dist.]
1970, writ ref'd n.r.e.).

 Tension between the "surrounding circumstances" rule and the parol evidence rule
can be traced back to 1860 in Hunt v. White, 24 Tex. 643 (1860), where the supreme court
declared that "extrinsic evidence of intention, as an independent fact, is inadmissible." Id. at 652. 
With respect to the surrounding-circumstances rule, however, the court went on to say: "But as
he may be supposed to have used language, with reference to the situation in which he was placed
. . . the law admits extrinsic evidence . . . ." Id. See also Bruce M. Kramer, The Sisyphean Task
of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction, 24 Tex.
Tech L. Rev. 1, 15 (1993) (citing Heirs of Watrous v. McKie, 54 Tex. 65 (1880) (holding extrinsic
evidence admissible to show consideration and purpose of agreement); Self v. King, 28 Tex. 552,
554 (1866) (holding that court may read document in light of surrounding circumstances but
cannot hear parol evidence on language used in writing)).

 The supreme court has subsequently permitted consideration of surrounding
circumstances in determining the proper construction of a contract where neither party contended
the language was ambiguous. See City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d
515, 519 (Tex. 1968). In 1981, in an oil and gas lease dispute, the supreme court sought to
eliminate confusion of its City of Pinehurst holding as to the consideration of surrounding
circumstances, since both parties cited to City of Pinehurst as support for their adverse positions. 
See Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 732 (Tex. 1981). There the court
stated:


Evidence of surrounding circumstances may be consulted. If, in the light of
surrounding circumstances, the language of the contract appears to be capable of
only a single meaning, the court can then confine itself to the writing. 
Consideration of the facts and circumstances surrounding the execution of a
contract, however, is simply an aid in the construction of the contract's language. 


Sun Oil, 626 S.W.2d at 731; see also Birmingham Fire Ins. Co. v. American Nat'l Fire Ins. Co.,
947 S.W.2d 592, 602 (Tex. App.--Texarkana 1997, writ denied) (analyzing recent precedent and
surrounding circumstances).

 This Court, in a recent opinion, relied on Sun Oil to distinguish between
surrounding circumstances and parol evidence for purposes of construing a termination clause in
an employment contract. See Carr v. Christie, 970 S.W.2d 620, 622-623 (Tex. App.--Austin
1998, pet. denied). We held that the atypical circumstances leading to execution of the contract
were not inadmissible parol evidence, but instead should be considered in determining whether the
employee's interpretation was reasonable. Id.

 In rejecting the appellee's parol evidence argument, this Court (like the supreme
court in Sun Oil) quoted Professor Williston's explanation of how courts determine ambiguity: 


In interpreting contracts or clauses set forth in 'clear and unambiguous' language,
the courts do not confine themselves to a mere inspection of the document. Before
committing themselves, the courts carefully examine the surrounding
circumstances, prior negotiations, and all other relevant incidents bearing on the
intent of the parties . . . .


Only after a careful and painstaking search of all the factors shedding light on the
intent of the parties, only after 'turning signs and symbols into equivalent realities'
will the court conclude that the language in any given case is 'clear and
unambiguous.'. . .



Id. at 623 (citing 4 Williston on Contracts § 600A (3d ed. 1957)) (citations omitted).

 Finally, following the trend of the City of Pinehurst and Sun Oil rulings, the
supreme court, while interpreting an insurance contract exclusion provision, recently reiterated
the correct rule: "While parol evidence of the parties' intent is not admissible to create an
ambiguity, the contract may be read in light of the surrounding circumstances to determine
whether an ambiguity exists." Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex.
1998) (citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589
(Tex. 1996), and National Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995)). 
As to when the surrounding circumstances rule is applied, the court stated: "If, after applying
these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous." Id.
(emphasis added).

 The foregoing decisions are controlling in this case. The trial court was obligated
to consider the surrounding circumstances at the time of the grant to determine whether "for
driveway purposes" was ambiguous. Because it did not, the court erred.

 The meaning of McNally's easement rests on interpreting "for driveway purposes"
in light of the surrounding circumstances at the time of the grant (in addition to the language of
the grant itself). Surrounding circumstances include those existing at the time of execution of the
writing, but do not include subsequent conduct of the parties. Sun Oil, 626 S.W.2d at 732. 
Various situations may qualify as surrounding circumstances, depending on the facts of the
particular case. In Sun Oil, for example, the supreme court considered as surrounding
circumstances the bargaining position of the lessors due to the strategic location of their property,
the experience level of the attorney drafting the lease, and the economic value of gas at the time
of execution. Sun Oil, 626 S.W.2d at 732. In Balandran, the court considered as surrounding
circumstances the promulgation of the policy form, including testimony from a Board of Insurance
hearing and statements from the Board of Insurance to the committee revising the form.
Balandran, 972 S.W.2d at 741-42. This testimony described the coverage included in the prior
policy form and included statements that the purpose of the reformation was not to make
substantive changes to the form. Id. In Christie, this Court considered as surrounding
circumstances the atypical conditions existing at the time the employment agreement was executed.
 Christie, 970 S.W.2d at 622-623. These circumstances included that the appellee purchased a
business at a reduced price in exchange for the appellee's promise to continue the appellant's
employment. Id.

 In the context of easement interpretation, surrounding circumstances have included
the location of the easement on the property and that of the abutting streets at the time of the grant. 
Kearney, 401 S.W.2d at 903. From these circumstances, the Kearney court concluded that there
was no necessity to burden the servient tenement with an easement for ingress and egress when
other access to the abutting streets was easily available. Likewise, the Colborn court considered
the prior use of the easement (which did not include parking), the burden on the servient tenement
(property value was reduced), ownership of the two tracts at the time of the easement, and that
there was no driveway on the dominant tenement. Colborn, 408 S.W.2d at 328-329.

 With respect to McNally's easement, I believe the appropriate surrounding
circumstances include at least the fact that the actual use of the easement at the time of the grant
included parking (similar to Balandran, where the prior policy form included the coverage claimed
by the insured). In addition, other facts might also be subject to consideration: (1) the purpose
of the 1979 grant was to effect the prior usage of the 1946 grant, which apparently had included
parking for more than 30 years (similar to the purpose of the policy reformation in Balandran);
(2) the owner of the dominant estate purchased the property with the understanding that it included
parking and therefore the property was more marketable (similar to the economic conditions of
the oil and gas market in Sun Oil); (3) the 1979 grant was prepared by a "scrivener" (similar to
the attorney's experience level in Sun Oil); (4) the location and physical layout of the property,
for example, the steep grade in front of the dominant estate prevented direct access to 602
Elmwood from the street (similar to location of the easement and abutting streets in Kearney); and
(5) parking on the easement in no way burdens the servient estate (in Kearney and Colborn, the
evidence showed just the opposite to be true).

 It is common knowledge that driveways are often used for parking; I therefore
believe the relevant phrase--"for driveway purposes"--is itself ambiguous even without regard
to surrounding circumstances. A consideration of the surrounding circumstances not only
reinforces that conclusion, but categorically settles it. Accordingly, I believe the granting of
summary judgment was erroneous because the proper construction of the instrument involved a
fact issue. See Columbia Gas, 940 S.W.2d at 589; Christie, 970 S.W.2d at 622.

 I would dismiss the appeal for lack of jurisdiction. If this Court has jurisdiction,
I would reverse the summary judgment and remand the cause to the trial court.



 

 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and Kidd

Filed: January 14, 1999

Publish

1. A Mother Hubbard clause usually recites that all relief not expressly granted is denied. 
Mafrige v. Ross, 866 S.W.2d 590, 591 (Tex. 1993).


 Surrounding circumstances include those existing at the time of execution of the
writing, but do not include subsequent conduct of the parties. Sun Oil, 626 S.W.2d at 732. 
Various situations may qualify as surrounding circumstances, depending on the facts of the
particular case. In Sun Oil, for example, the supreme court considered as surrounding
circumstances the bargaining position of the lessors due to the strategic location of their property,
the experience level of the attorney drafting the lease, and the economic value of gas at the time
of execution. Sun Oil, 626 S.W.2d at 732. In Balandran, the court considered as surrounding
circumstances the promulgation of the policy form, including testimony from a Board of Insurance
hearing and statements from the Board of Insurance to the committee revising the form.
Balandran, 972 S.W.2d at 741-42. This testimony described the coverage included in the prior
policy form and included statements that the purpose of the reformation was not to make
substantive changes to the form. Id. In Christie, this Court considered as surrounding
circumstances the atypical conditions existing at the time the employment agreement was executed.
 Christie, 970 S.W.2d at 622-623. These circumstances included that the appellee purchased a
business at a reduced price in exchange for the appellee's promise to continue the appellant's
employment. Id.

 In the context of easement interpretation, surrou