HEIRS OF NAT. WATROUS V. M. D. MCKIE, EX'R, ET AL.

(Case No. 901.)

1. FACT CASE — JUDGMENT.— See opinion for an agreement for one suit to determine the result of another pending, and for facts under which it was *held* —

    1. That a trial of the test case on the merits, and not a judgment by consent or a plea in abatement, was intended.

    2. That the right to have judgment rendered in the dependent suit resulted from the fact of a recovery in the first suit, and not the grounds of recovery.

    3. The right to have judgment rendered in the dependent suit could be enforced, though the judgment in the case tried may have been rendered on an issue not common to both suits.

2. CONSTRUCTION OF WRITTEN AGREEMENTS.— Surrounding circumstances may be looked to in order to arrive at the true meaning and intention of parties expressed in the words used in a written agreement; but as the writing is the only outward and visible expression of their meaning, no other words can be added or substituted; the inquiry must be confined to the meaning of the words used.

3. CONSTRUCTION.— The construction of a written agreement cannot depend on the motives, purposes or expectations of one of the parties to it, as contradistinguished from the plain import of the words used.

*Simkins & Simkins*, for appellants.

*Rice & McKie* and *Frost & Barry*, for appellees.

I. Parol evidence is admissible to explain the intention of parties to a written agreement or contract. Stampers *v.* Johnson, 3 Tex., 1; Walker *v.* Donald, 49 Tex., 458; Smith *v.* Crosby, 47 Tex., 129. "The question is, what, in fact, was the contract and agreement of the parties?" 45 Tex., 452; 38 Tex., 280; 4 Kent's Com., 142; 1 Greenleaf's Ev., sec. 277; Reed *v.* Insurance Co., 5 Otto, 23; Central Law Journal, January 30, 1880, p. 93.

II. The agreement being silent as to its consideration and its object and purpose, extrinsic evidence was admisble to show the consideration and the object and purpose of it. 3 Tex., 1; 49 Tex., 458; 47 Tex., 129; 45 Tex., 452;

38 Tex., 280; 4 Kent's Com., 142; 1 Greenleaf Ev., sec. 277; 5 Otto, 223; Pothier on Obligations, vol. 2, p. 181; 2 Phillips' Evidence, 633; Kinney v. Whiton, Am. Dec., vol. 26, p. 462; 49 Vt., 141.

III. The agreement having been written by appellants' counsel, and its enforcement sought by appellants in this cause, the court in construing it should lean most strongly against the construction contended for by appellants. Broom's Legal Maxims, 7th ed., 550; Tierney v. Ethrington, 1 Burr., 34; 2 Bla. Com., 12th ed., 380; 5 Otto, 673.

GOULD, ASSOCIATE JUSTICE.— The heirs of Nathaniel Watrous were the plaintiffs in this suit of trespass to try title to the John Yerbe 960-acre survey, patented to their ancestor in 1846, their petition being filed in 1855. Jacob Elliott, who became the sole defendant in this suit, claimed that part of the Yerbe tract which was in conflict with the Rachel Leach league. As the owner of that league and another adjoining league under grants in 1835, Elliott had in 1852 brought suit against D. R. Mitchell, J. L. McKinney, B. L. Ham and numerous other defendants claiming under junior grants conflicting with those leagues; and in August, 1858, that suit was pending in Ellis county, to which it had been carried from Navarro by change of venue, though the number of defendants had been reduced by compromises. McKinney and Ham, claiming respectively the James and Wiley Powell one-third leagues, and other defendants holding under them, had not compromised. Croft and Prendergast were of counsel for Elliott in both suits, and Mills was of counsel for the heirs of Watrous and the defendants in the suit brought by Elliott. On August 20, 1858, the following agreement was entered into:

"This agreement, made and entered into between Roger Q. Mills, attorney for the heirs of Nathaniel Watrous, deceased, in their suit against Jacob Elliott and others in

the district court of Navarro county for 960 acres granted
to Nathaniel Watrous, assignee of John H. Yerbe, and
William Croft, attorney for Jacob Elliott, witnesseth, that
the parties mutually agree to and with each other that
the suit above described in Navarro county district court
shall be continued on the docket without trial until the
final termination of the suit of Jacob Elliott v. Mitchell,
McKinney, Ham and others, pending in the district court
of Ellis county by change of venue from this.   And it is
further agreed between the parties, that if Elliott recovers
in the suit against the defendants in the same, then said
Mills is to confess judgment in favor of said Elliott in the
Navarro suit.   But if the said defendants in the Ellis suit
should recover against Elliott in said Ellis cause, then
said Elliott or his attorney is to confess judgment in favor
of the heirs of Watrous in the Navarro suit for the land
sued for, and judgment shall be entered in said cause
according to this agreement.

"ROGER Q. MILLS,

"Attorney for heirs of Watrous.

"CROFT & PRENDERGAST,

"Attorneys for defendants."

In 1878 the heirs of Watrous moved the court to enter
up judgment in their favor on this agreement, alleging
that the suit of Elliott v. Mitchell et al. had in 1877 finally
terminated in a judgment against Elliott and in favor of
the defendants.   That motion was resisted by the repre-
sentatives of Elliott (he having died) denying that there
had been such a recovery as was contemplated in the
agreement.   The case was tried without the jury and
resulted in a judgment for the defendant.   The control-
ling question on the trial, and here, is as to the true con-
struction of this agreement.   The grounds upon which
the court acted appear in the "conclusions of fact and of
law" embodied in the record, the material part of which
is as follows:

"I further find in the suit of Jacob Elliott v. Mitchell

*et al.*, that the defendants set up four special defenses, as follows: *First.* That the Rachel Leach grant was void, because it was outside of the limits of Burnett's colony, and that the person who issued it had no authority to do so. *Second.* That the defendants were innocent purchasers of the land sued for, for a valuable consideration, under junior grants from the government, without notice of the senior grant. *Third.* That the grant was void for uncertainty in its calls, and could not be identified on the ground. *Fourth.* Statutes of limitation of three and five years. I believe, and so find, that the supreme court of Texas in the case of Elliott *v.* Mitchell, reported in 47th Texas, page 445, virtually determines the three first issues in favor of Jacob Elliott, and the last issue only in favor of defendants. I find further, that when the suit was finally decided in the supreme court, there were only two defendants, and that when the suit was first instituted, there were twenty-five defendants in all, and that the evidence does not show how many defendants there were on the 20th of August, 1858, and that a considerable number of them had compromised with the plaintiff. I further find that the purpose of the agreement of August 20, 1858, was to avoid the expense, costs and trouble of making the same proof in this cause as would have to be made in the case of Jacob Elliott *v.* Mitchell *et al.*, then pending in Ellis county; that the issues made by the defendants in the suit of Jacob Elliott *v.* Mitchell *et al.* were identical with the issues made by the plaintiff in this cause, with the exception of the pleas of the statute of limitation. I further find that prior to August 20, 1858, the defendants had filed pleas of limitation in the suit of Jacob Elliott *v.* Mitchell *et al.*"

### CONCLUSIONS OF LAW.

"I conclude that the agreement of August 20, 1858, construed in the light of the facts and circumstances under which it was made, bears internal evidence of the

fact that the parties to it understood at the time that the final decision of recovery, in the Jacob Elliott *v.* Mitchell *et al.* case, was to be upon the strength of the respective claims urged by the parties to that suit, and not upon pleas of the statute of limitations then filed by the defendants in that cause. Two of the defendants in the Elliott *v.* Mitchell case having recovered against Elliott upon their pleas of limitation, and the plaintiffs in this action not being in possession of the land in controversy, and in the very nature of the case not claiming it by virtue of the statute of limitations, but only under the terms of said agreement, I conclude that while the issues made by the plaintiffs in this case are identical with the three first issues made by defendants in the Elliott *v.* Mitchell case, yet there could be no identity of issue in the two cases as to the statute of limitations, and I conclude that the agreement was intended to be operative and binding only in respect to those issues that were identical in the two cases. Two of the defendants in the Elliott *v.* Mitchell case having recovered only by virtue of their adverse possession under the statute, I conclude that judgment should be rendered for the defendants in this case."

Although the court finds that but two of the defendants had finally recovered, and that it had not been shown how many defendants there were at the date of the agreement, it does not appear that this supposed failure to show that all who were defendants at that date had participated in the final recovery, constituted one of the grounds of the action of the court. We are, however, of opinion that the evidence sufficiently shows that there were no compromises after the agreement, and that the final judgment was in favor of all of the defendants contemplated by the agreement. The evidence of Col. Mills to that effect is clear and uncontradicted.

In like manner, whilst the court finds as a conclusion of fact that the "purpose of the agreement" was to avoid

the cost and trouble of making the same proof twice, meaning, we suppose, that such was the purpose of the parties, it does not appear how far its judgment was based on that conclusion of fact, or upon any of the oral testimony stating what the main issues in the Elliott v. Mitchell case were, and on what questions that case was to be determined to constitute the recovery intended. From the explanation in signing the bill of exceptions, and from the statement of the conclusions of law, it is to be inferred that the court disregarded the oral testimony, except in so far as it showed the "facts and circumstances" under which the agreement was made, and reading the agreement in the light of those circumstances, found in it "internal evidence" that a recovery by the defendants on the statute of limitations was not a recovery within the meaning of the agreement.

In our opinion the purport of the agreement, reading it in the light of all the surrounding facts, was to continue the case until the final termination of the Ellis county suit, when judgment was to be rendered for Elliott, if he succeeded in obtaining judgment for the land in that suit; but if the judgment in that suit was for the defendants, then the Watrous heirs were to have judgment against Elliott for the land sued for in this case.

The word "recover" is technically more appropriate when applied to a plaintiff who succeeds in his action, being by the judgment of the court awarded the relief sought for, than when applied to a defendant who merely succeeds in his defense, and is by the judgment of the court allowed to go hence without day. Evidently, however, the word is used in the agreement to signify success in obtaining a final judgment by the defendants, as well as by the plaintiffs.

Recoveries or judgments are of different kinds; but in a suit for land, the judgment for the defendants is the same whether they succeed on the strength of their title

or on the defense of limitation. Looking at the language of the agreement and the surrounding circumstances, it is evident that a trial on the merits was intended, and not a final judgment by consent, or on a plea in abatement. But whilst we think the agreement contemplated a judgment settling the contested question of the right to the land, we find nothing in the language of the agreement indicating that such a judgment, if rendered on the ground of limitation, would not be the recovery intended. It is true that these were questions common to the two cases, and that limitation does not appear to have been one of those common questions. At most this amounts to no more than this: that if the agreement had been to continue the case to omit the adjudication of these common issues, it would have been one that appeared reasonable and of a kind not uncommon. But the parties saw fit to make a very different agreement, one which it was competent for them to make, and which is plain in its terms, making the right to a judgment in this suit depend on the fact of recovery, not the grounds of recovery. Surrounding circumstances may be looked to in order to arrive at the true meaning and intention of the parties as expressed in the words used, "but as they have constituted the writing the only outward and visible expression of their meaning, no other words are to be added to it, or substituted in its stead. The duty of the courts in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of the words they have used." 1 Gr. Ev., sec. 277; Reed v. Ins. Co., 5 Otto, 30; Maryland v. R. R. Co., 22 Wall., 112; Self v. King, 28 Tex., 552.

The motives of Elliott or his counsel in making the agreement may not have been wholly the same with those of defendants or their counsel. If he was oblivious or regardless of the defense of limitation in his Ellis county

suit, the testimony shows that such was not the case with counsel for the heirs of Watrous. The construction of the agreement is not dependent on the purposes, motives or expectations of one of the parties.

If the Ellis county case had been decided in Elliott's favor on some issue peculiar to that case, not anticipated by them at the time, the heirs of Watrous would still have been bound by their agreement. So the representatives of Elliott must abide by the agreement which he made, even though it may now appear to have been imprudently made, because, perhaps, of over-confidence in the opinion that the title of defendants would not support the defense of limitation under the three years' statute.

The judgment is reversed, and judgment will be rendered in this court in favor of appellants and against appellees for the recovery of the land sued for.

REVERSED AND RENDERED.

[Opinion delivered November 26, 1880.]