PHILLIPS PIPE LINE COMPANY,
Appellant,

v.

CLEAR CREEK PROPERTIES, INC.,
et al., Appellees.

No. 12560.

Court of Civil Appeals of Texas,
Austin.

Granted on Motion for Rehearing
June 29, 1977.

Rehearing Denied July 20, 1977.

Kent M. Rider, Stayton, Maloney, Hearne & Babb, Austin, for appellant.

John H. Akin, Pearce, Smith & Akin, Austin, for appellees.

SHANNON, Justice.

The opinion of this Court filed on May 18, 1977, is withdrawn, and the following opinion replaces it.

Appellees, Clear Creek Properties, Inc., Carl Morris, Trustee, and Edward R. Rathgeber, sued appellant Phillips Pipe Line Company in trespass in the district court of Travis County. After trial to a jury, the district court entered judgment for appellees for $50,179.65.

Appellees pleaded that Clear Creek Properties, Inc., and Rathgeber owned two tracts of land in Travis County, one tract containing about 291 acres and the other tract containing about 215 acres. The 215-acre tract is situated to the west of and adjacent to the 291-acre tract. Appellees alleged further that in 1928, Shell Pipe Line Corporation acquired an express easement for pipe line use in a twenty-foot wide strip over the two tracts. The twenty-foot strip runs for about two miles from the west side of the 215-acre tract to the east side of the 291-acre tract. A ten-inch gas pipe line remained in place along the center line of the center stripe from 1928 to June, 1973. Appellees pleaded further that in 1953 appellant purchased the pipe line together with easement rights from Shell.

Appellees alleged that in June, 1973, without their consent, appellant entered upon appellees' land outside the twenty-foot wide easement strip and proceeded to clear the land of vegetation and trees within a new strip about eighteen to twenty feet in width. The new strip was north of the north line of the easements and extended for two miles through both tracts of land. The clearing of the trees and vegetation occurred in connection with appellant's laying a new gas pipe line located within the twenty-foot strip. Appellees averred that as a result of appellant's trespass many large and valuable trees were destroyed.

Appellees pleaded that they were in the process of "developing" the land into a subdivision for mobile homes, and that the presence of the trees contributed to the desirability of the area and, as such, represented a large part of the value of the land. By reason of the removal of the trees appellees alleged a diminution in value of both tracts in the total sum of $36,000. After the trees were cut, appellant left large stumps. Appellees claimed appellant was liable to them for $2,500, that sum being reasonable cost of removal of the stumps. Appellees also alleged that after laying the new pipe, appellant failed to properly refill the ditch, thereby leaving a depression for the entire length of the pipe. Appellees pleaded that the reasonable cost of restoring the ground to its approximate condition before excavation was $7,000.

Appellant answered, among other things, that it acted in the good faith belief that it was legally entitled to do what it did for the reason that its acts were ". . . reasonably necessary for it to have the full enjoyment of its easement rights . . ." under the express easement. Appellant also alleged that it was entitled to make such use of appellees' land ". . . by virtue of the incidental rights which it possesses as a part of the grant contained in the original 1928 easement to repair and replace its pipeline and to have ingress and egress to and from it [the pipeline]."

Appellant, as well, filed a cross-action in which it sought, after the fact, to condemn an easement for a "temporary working space" across appellees' lands. Such easement rights were to have commenced on April 15, 1973, and terminated on July 30, 1973.

The relevant part of the express easement is set out below.

". . . and being a strip of land 20 ft. wide, the center line of which is 887-ft. S. 30° W. of N. E. corner of said Moore property, said point being Station # 98, plus 72, and extending S. 70° 10′ E. across said property approximately in straight line a distance of 3003-ft. to point in West line of the said Vance property at Station 128 plus 75, said point being S. 30° W. 260 ft. from N. W. corner of said Vance property on Onion Creek;

"Together with rights of ingress and egress to and from said line or lines, or any of them, for the purpose aforesaid. The Grantor reserve [sic] the right to use and fully enjoy the right hereinbefore granted and the Grantee right hereinbefore granted and the Grantee hereby

agrees to pay any damages which may arise to crops, timber, fences or buildings of said Grantor from the exercise of the rights herein granted, said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one to be appointed by the Grantor, one by the Grantee, and the third by the two so appointed, and the award of such three persons or any two of them shall be final and conclusive.

.    .    .    .    .

"This instrument embodies the entire agreement between the parties hereto, including the consideration paid or to be paid therefor."

.    .    .    .    .

We are not concerned in this appeal with the permissible use by appellant of the land within the confines of the easement. Appellant by the terms of the easement instrument had the right to lay the new pipe line inside the twenty-foot strip. The question, instead, is whether appellant may use appellees' land situated outside the boundaries of the easement in order to lay the pipeline within the easement.

Appellant claims that it possessed under the easement instrument the right to do those things which were reasonably necessary for it to enjoy the easement so long as appellant kept its pipe line within the twenty-foot strip. Appellant reminds us that one of the specific rights conferred upon its predecessor was the right to replace its pipe, which is coupled with the right of ingress and egress for that purpose. Appellant insists that ". . . these rights, taken together, plus with the general law that it had such other incidental and secondary rights as are necessary for it to fully enjoy the express rights of its easements, authorized it to temporarily enter on and cause injury to appellees' property for the 13 feet outside of the described permanent 20-foot easement without being guilty of trespassing on that land." Appellant then argues that because it rightfully used appellees' land to enjoy its easement, it was not responsible to appellees for damages to the land.

Appellees argue, to the contrary, that appellant was confined by the terms of the easement to an operation entirely within the twenty-foot strip. Any excursion by appellant outside the twenty-foot strip constituted a trespass for which appellant must respond in damages.

■ The scope of an express easement is determined by the same rules which are applicable to deeds and other instruments. *Armstrong v. Skelly Oil Co.,* 81 S.W.2d 735 (Tex.Civ.App.1935, writ ref'd). In case of an unambiguous writing, the courts will give effect to the intention of the parties as expressed by or as is apparent from the writing. *Wall v. Lower Colorado River Authority,* 536 S.W.2d 688 (Tex.Civ.App.1976, writ ref'd n. r. e.). In the usual case, the instrument alone will be deemed to express the intention of the parties for it is the objective, not the subjective, intent which controls. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515 (Tex. 1968).

The parties did not plead that the easement instrument was ambiguous, and accordingly, they did not tender evidence to explain any supposed ambiguity. Under such circumstances the courts give effect to the intention of the parties as expressed by or as is apparent in the easement instrument.

■ The rights of the parties in the case at bar are governed by the terms of the express easement. An examination of the language of the easement shows appellant's predecessor was granted a twenty-foot strip of land in which it and its assigns could ". . . lay, construct, reconstruct, replace, renew, maintain, repair, change the size of, and remove pipes and pipe lines . . ." and in which appellant's predecessor and its assigns could erect and maintain a single line of poles. The owner of the easement was also granted ". . . rights of ingress and egress to and from said line or lines, or any of them, for the purpose aforesaid."

By the terms of the easement appellant had the "right of ingress and egress" across appellees' land to the twenty-foot strip to lay the new pipe line. The phrase "right of ingress and egress" usually means the right to enter and the right to exit. Appellant's activities on appellees' land consisted of far more than merely entering upon the land to go to the twenty-foot easement strip and leaving from the easement strip to regain the public roadway. Appellant entered and occupied a swath of appellees' land thirteen to twenty feet in width and two miles in length for a period of three and a half months. During its occupation appellant cleared that land of trees and brush. Nothing in the easement grant or the phrase "right of ingress and egress" contemplates such a use or the exercise of such dominion and control.

The easement in the case at bar is not one wherein the total width of the easement was not specified and where the location of the easement was not designated, as was the easement in *Harris v. Phillips Pipe Line Company*, 517 S.W.2d 361 (Tex.Civ.App. 1974, writ ref'd n. r. e.). To the contrary, and as was written before, the easement instrument involved in this appeal specified a strip twenty feet in width and designated the exact location of that strip. Appellant's predecessor purchased the right to use a specific strip of land for the purposes set out in the easement instrument. As a result, the maximum area in which appellant could operate was known. The easement instrument did not leave the parties in a situation where the extent of the easement could never become fixed or definitely ascertainable, but instead the parties' predecessors in title by the terms of the easement instrument fixed and made certain their rights. There is no implied easement, incidental to the grant of the express easement, which conferred upon appellant the right to occupy and cause damage to appellees' land outside the confines of the easement strip. Appellant was a trespasser and is liable for damage done appellees' land.

Appellant's second point of error is that the court erred in overruling appellant's motion for judgment based upon its cross-action in condemnation under Tex.Rev.Civ. Stat.Ann. art. 3269 (1968). The point of error will be overruled.

Appellant occupied appellees' property from about April 15, 1973, to about July 30, 1973. Appellees filed suit in April, 1974. In an effort to justify its past occupation of appellees' land, appellant filed its cross-action seeking to condemn a "temporary working space" for a period of time nearly a year previous. The condemnation which appellant sought was for a period commencing April 15, 1973, and terminating July 30, 1973.

The authority for the exercise of the power of eminent domain is found in the statutes. Appellant claims that Tex.Bus. Corp.Act Ann. art. 2.01(B)(3)(b) and Tex. Rev.Civ.Stat.Ann. art. 6022 empower it to condemn for a "temporary working space."

Appellant points to the following portion of Article 2.01(B)(3)(b) of the Texas Business Corporation Act:

". . . any corporation engaged as a common carrier in the pipe line business for transporting oil, oil products, gas, salt brine, fuller's earth, sand, clay, liquefied minerals or other minerals solutions, shall have all of the rights and powers conferred by Articles 6020 and 6022, Revised Civil Statutes, 1925."

Article 6022 provides, in pertinent part, as follows:

"Every person, firm, corporation . . . owning, operating or managing any pipe line, or any part of any pipe line within this State for the transportation of crude petroleum that is declared by this title to be a common carrier, shall have the right and power of eminent domain in the exercise of which he, it or they may enter upon and condemn the lands, rights of way, easements and property of any person or corporation necessary for the construction, maintenance or operation of his, its or their common carrier pipe line . . . ."

■ We are convinced that appellant has not shown us, nor have we discovered, any statute or case law conferring upon a pipe

line company the right to condemn for a "temporary working space."

The jury answered that the value of the 291-acre tract was reduced by $30,000 by the cutting of the trees, and that the value of the 215-acre tract was reduced by $2,000 by the cutting of the trees. Appellant's third point of error is that there is no evidence to support those answers. There was no evidence, says appellants, because the district court erred in permitting appellees to testify to the amount of damages sustained based on unrecorded and preliminary plats of proposed subdivisions. We will overrule the point of error.

Appellees bought the 291-acre tract because of its beautiful stand of trees. Appellees' evidence was that from the time of purchase appellees had planned to make it a very "exclusive" type of residential subdivision for mobile homes. The subdivision would be considered "exclusive" because of the trees and because the lots were planned to be extra large so that double-wide mobile homes could be placed cross-wise instead of the usual side-by-side arrangement.

It was undisputed that the highest and best use of the property was for subdivision for residential purposes. Appellees purchased the 291-acre tract in 1971 and by July, 1971, appellees had presented to the City of Austin preliminary plans for developing the 291-acre tract. By June of 1973, appellees had platted two sections out of the 291-acre tract, and sales of those lots were taking place. Although some alternatives had been considered, as of June, 1973, appellees' plan was to continue the development of the balance of the 291-acre tract in substantially the same manner as shown in the preliminary plan. Initial development on the ground had been undertaken in June, 1973, for the first of the lots crossed by appellant's project. The initial development consisted of rough-cut streets and the installation of utilities.

The "lots" crossed by appellant's project were similar to the adjacent lots in the platted section of the 291-acre tract. These "lots" were similar in location, size, shape, and tree cover. As a result, appellees' witness testified, over objection, that the "lots" crossed by appellant's project had the same value, before the trees were cut, as those in the platted section. That value was $5,700 for each lot. After the destruction of the trees the lots had an average value of $4,500. The witness testified that the value lost to the twenty-six lots crossed by the project was $31,000.

Appellant argues that in a proceeding to determine the value of raw acreage it is improper to admit into evidence hypothetical plats of nonexistent subdivisions. We agree, but the rule is not applicable under the circumstances of this case. This case does not concern raw acreage. The preliminary plat of the subdivision of the 291–acre tract had been on file for two years prior to appellant's invasion of the land. Actual development of the land pursuant to the preliminary plan had been under way for two years before the time of appellant's intrusion, and appellees had commenced development in the "lots" crossed by appellant's project by June 23, 1973. Under these circumstances, the district court concluded that it was reasonably probable that the balance of the 291-acre tract would continue to be developed in accordance with the preliminary plat and, accordingly, did not err in admitting into evidence the testimony relating to the diminution of the value of the land upon a lot basis. See *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954).

We have discussed appellant's important points of error. The balance of those points have been considered, and as they have no merit, they are overruled.

The judgment is affirmed.