**R. Stephen McNALLY, Appellant,**

**v.**

**Joseph GUEVARA and Maria Trevino, Appellees.**

**No. 03–97–00380–CV**

Court of Appeals of Texas, Austin.

Jan. 14, 1999.

Rehearing Overruled April 22, 1999.

---

R. Stephen McNally, Austin, for Appellant.

James P. Wallace, Jr., James P. Wallace, Jr., P.C., Georgetown, for Appellees.

Before Chief Justice ABOUSSIE, Justices JONES and KIDD.

MARILYN ABOUSSIE, Chief Justice.

Appellant, R. Stephen McNally, complains of the trial court's granting of summary judgment in favor of appellees, Joseph Guevara and Maria Trevino. We will affirm.

### STATEMENT OF FACTS

In November 1979, McNally purchased the house at 602 Elmwood for use as multiple tenant housing. The purchase included a separate grant of "an easement for driveway purposes" ("the driveway easement") over 600 Elmwood, appellees' property. Appellees' predecessors granted the driveway easement to McNally's immediate predecessor in January 1979. The driveway easement crosses the back of appellees' property and leads to the driveway and garage behind the 602 Elmwood house.[1] McNally asserts that his predecessor parked on the driveway easement and that McNally and his tenants have been driving and parking on the driveway easement for the past sixteen years.[2] Although the 600 Elmwood property, a fourplex, is also used as rental housing, these residents have their own parking on that property and access to that parking independent of the driveway easement.

Appellees purchased the 600 Elmwood property in 1992. Despite the long history of 602 Elmwood residents parking on the driveway easement, McNally claims that appellees attempted to interfere with his parking rights by erecting a no parking sign, threatening to tow his tenants, and telling McNally that he and his tenants have no right to park on the easement. In response, McNally filed suit against appellees, seeking a declaratory judgment that he had the right to park on the driveway easement and an injunction prohibiting appellees from interfering with that right. McNally claimed he was entitled to park on the driveway easement because the express grant of the driveway easement included parking, or, alternatively, he had acquired a prescriptive easement to park in the driveway easement area. Appellees counterclaimed and requested the trial court to declare that the driveway easement was for ingress and egress only and did not include parking. Appellees then filed a motion for summary judgment. After a hearing, the trial court granted appellees' motion for summary judgment. McNally now appeals.

### DISCUSSION

#### I. Finality of Summary Judgment

McNally argues in his first point of error that the summary judgment order is not final and reviewable because it does not rule on all issues presented in the pleadings. In particular, McNally contends that the judgment does not contain a "Mother Hubbard" clause or its functional equivalent. He also insists the order fails to dispose of appellees' claim for attorney's fees and does not rule on the merits of his prescriptive easement claim.[3] We reject McNally's arguments.

In order to be final and appealable, an order granting a motion for summary

---

1. The record is unclear as to whether the driveway easement provides the only access to McNally's property or just the most convenient access. The diagram printed in the dissenting opinion illustrates the layout of the two properties and the easement.

2. McNally claims the driveway easement area provides four to six parking spaces for his tenants. The summary judgment proof showed that McNally charged his tenants for parking in the driveway easement, either in the lease agreement or in a separate parking charge.

3. McNally argues that the summary judgment order also does not address his "implied easement claim." This claim, however, was not before the trial court at the time the order was signed on March 21, 1997. McNally did not assert this claim until he filed a Second–Amended Original Petition on October 1, 1997. The issue, therefore, was never before the trial court and cannot affect the finality of the summary judgment that was granted.

judgment must dispose of all parties and issues before the court. *See Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993). "If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal." *Mafrige,* 866 S.W.2d at 592. Further, finality is to be judged by the trial court's intent as discerned from the language of the decree, the record as a whole, and, occasionally, the parties' conduct. *See Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274, 277 (Tex.1996).

■ Here, we have an order that disposes of all issues and parties before the court and evidences the trial court's intent that it be final. McNally's petition claimed an entitlement to park on the easement based either on the express driveway easement itself or upon a prescriptive easement theory. Appellees' summary judgment motion attacked both of McNally's theories and requested judgment that the driveway easement be found to exclude parking as a matter of law. In ruling on the matter, the trial court recited that appellees' motion for summary judgment "should be in all things granted and that the [appellees] in this action are entitled to summary judgment." The trial court found

> that the easement in question ... is a specific and unambiguous grant of an easement; that the easement gives [McNally] the right to travel over the easement as a means of ingress and egress but does not give [McNally] the right to park automobiles or other motor vehicles on the easement....

The trial court further found "as a matter of law that [appellees should] prevail on their claims for relief under the Uniform Declaratory Judgments Act." Finally, the trial court ordered all costs taxed against McNally. Although the trial court's order did not specifically deny relief based upon the prescriptive easement theory, the trial court in fact ruled upon, and rejected it, when it deemed that appellees' summary judgment motion should be *in all things* granted. While McNally is correct that the summary judgment order does not decide appellees' claim for attor-

ney's fees, this is due to appellees' waiver of attorney's fees and not to an oversight of the trial court, which could render the order a partial summary judgment. Appellees admit that they abandoned their claim for attorney's fees in the trial court and affirm that waiver on appeal. Thus, they cannot recover attorney's fees despite appellant's insistence. Consequently, we conclude that, as the trial court intended, the summary judgment order disposed of all issues and parties in the case; thus, the order is final and appealable. We overrule McNally's first point of error.

## II. Summary Judgment

The standards for review of a summary judgment are well established: (1) the movant must show there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant seeking summary judgment based on a plaintiff's inability to prove its case must conclusively disprove at least one element of each of the plaintiff's causes of action. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo. See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994).

We first address McNally's third point of error concerning the scope of the driveway easement, as this is germane to all of McNally's points of error. McNally avers that the trial court erred in granting summary judgment on the basis that an easement for "driveway purposes" absolutely excludes parking. McNally complains that the language of the driveway easement is ambiguous, thus rendering its scope a fact question inappropriate for summary judgment. Appellees contend the trial court correctly determined that the driveway easement excludes parking as a matter of law. We agree with appellees.

■ There is no dispute that McNally has the right to utilize the driveway easement to access the parking located behind his house. The dispute centers on whether the express grant allows McNally's tenants to park their cars in the driveway easement area. As summary judgment proof that the terms of the driveway easement exclude parking as a matter of law, appellees offered an opinion out of this Court, *Colborn v. Bailey*, 408 S.W.2d 327 (Tex.Civ.App.—Austin 1966, no writ). *Colborn* involved the same issue as in this case: whether an owner of an easement for "driveway purposes" can park automobiles on that easement. The *Colborn* court concluded that an easement for "driveway purposes" only provides a means of ingress and egress and does not include parking rights. *See Colborn*, 408 S.W.2d at 329. In light of the *Colborn* precedent, we reject McNally's argument that summary judgment was inappropriate because the easement is ambiguous and presents a fact question. In accordance with *Colborn*, we conclude that McNally's specific easement for "driveway purposes" is solely for ingress and egress and excludes parking. Point of error three is overruled.

In his second point of error, McNally claims the trial court erred in granting summary judgment on issues not expressly presented in the motion, not proven by the summary judgment proof, and unsupported by Texas law. McNally first complains that appellees' summary judgment motion did not include their claim that McNally forfeited the driveway easement. However, appellees asserted this argument in their counterclaim only as an alternative position if the trial court ruled against them on the scope of the easement, which it did not. Second, McNally argues the summary judgment motion did not address appellees' request for attorney's fees. As previously explained, appellees waived attorney's fees. Appellees represented in their brief and at oral argument that they waived their claim for attorney's fees, thus explaining why their counterclaim requests attorney's fees but their summary judgment motion does not and why none were awarded.

■ Lastly, McNally argues the summary judgment motion failed to mention, expressly present, or conclusively disprove his prescriptive easement theory. Appellees' summary judgment motion refers to McNally's "alternative contention that he is entitled to park on the easement ... because [he] has parked on the easement over a period of time." The trial court's order granted appellees' motion in all things. Thus, we conclude that the motion did address the prescriptive easement claim raised in McNally's pleadings and the trial court's order found against McNally on this theory as a matter of law. Appellees attacked McNally's prescriptive easement claim by arguing in their summary judgment motion that a grant of a specific easement may not be enlarged by prescription. *See Kearney & Son v. Fancher*, 401 S.W.2d 897 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.). In *Kearney*, the court stated if "the terms of the grant are specific, the limits of the use may not be enlarged." *Kearney*, 401 S.W.2d at 903. Here, McNally has a specific grant of a driveway easement for ingress and egress only. Accordingly, we agree with appellees that McNally cannot enlarge that right to include parking by prescription. McNally's second point of error is overruled.

McNally argues in his fourth point of error that the summary judgment motion failed to establish that parking was not necessary to the full enjoyment of the driveway easement; therefore, the summary judgment order was not appropriate. Our holding that the scope of the easement for "driveway purposes" is limited to ingress and egress makes this point moot. Point of error four is overruled.

### CONCLUSION

We have determined that the summary judgment order was final and appealable, the summary judgment motion presented and conclusively disproved all issues, and the trial court correctly interpreted, as a matter of law, the scope of the express driveway easement. Accordingly, we affirm the summary judgment.

J. WOODFIN JONES, Justice, dissenting.

I respectfully dissent.

384

Appellant R. Stephen McNally sued Joseph Guevara and Maria Trevino, appellees, seeking a declaratory judgment that he possessed an easement permitting him and his tenants to park on a portion of appellees' lot, which adjoins his property. Appellees filed a counterclaim seeking declaratory relief and attorney's fees. The trial court rendered summary judgment for appellees, but the order granting appellees' motion did not address the issue of attorney's fees. McNally perfected this appeal, seeking first to determine if the summary judgment is a final, appealable judgment. If it is not, McNally asks to have his own appeal dismissed. If it is a final judgment, he complains that the trial court erred in declaring that the easement document does not permit him to park on the servient estate.

The majority affirms. I would dismiss the appeal for lack of jurisdiction. If, however, this Court does have jurisdiction, I would reverse the judgment and remand the cause.

In November 1979, McNally purchased property at 602 Elmwood in Austin for use as multiple-tenant housing. The purchase included a separate easement "for driveway purposes" over a portion of the adjacent property at 600 Elmwood. That adjoining property at 600 Elmwood, the servient estate of McNally's easement, is now owned by appellees. The diagram above, though not to scale, gives a rough idea of the layout of the two properties and the easement. The practice since the purchase of the property has been for McNally's tenants to park their cars in the easement area. Indeed, because of the steep grade at the front of the dominant estate, there is no direct access from the street to the front of 602 Elmwood. In order to have adequate parking, McNally and his tenants must make use of the driveway easement.

The easement in question was originally created in 1946, when the owner of the servient estate, appellees' predecessor-in-title, deeded McNally's predecessor-in-title a written easement "for driveway purposes" for a recited consideration of $750. The easement described in the deed lies across the back of the servient estate. Containing approxi-

mately 971 square feet, the easement is 18.5 feet wide and crosses the entire lot, which is 52.5 feet in width.

With this easement, the owner of the dominant estate used 602 Elmwood as a boarding house and ultimately as group housing for a number of students. The student tenants routinely parked in the deeded easement across the servient estate and were doing so at the time the subsequent purchasers, Wilhite and Smith, a house renovation and resale partnership, bought the dominant estate in the late 1970s. Wilhite and Smith also acquired the neighboring property, 600 Elmwood, which was the servient estate for the above easement. Although it was not immediately realized, their ownership of both the 600 and 602 Elmwood properties extinguished the easement by merging the estates in common ownership. *See Tirado v. Tirado*, 357 S.W.2d 468, 473–74 (Tex.Civ.App.—Texarkana 1962, writ dism'd). Nevertheless, Wilhite and Smith continued to use the driveway behind 600 Elmwood as a parking area for 602 Elmwood.

The renovation partnership sold 602 Elmwood to Dr. John Bateman in 1978, but the partners retained 600 Elmwood for the time being. Even though the driveway easement no longer existed at the time of Bateman's purchase, the parties involved understood the purchase of the property to include the right to park in the driveway behind 600 Elmwood. It was not until several months later, when they found a potential buyer for the 600 Elmwood property, that Wilhite and Smith realized that the 1946 easement had been merged out of existence. Faced with this dilemma, they prepared and signed a new easement. This 1979 deed used exactly the same wording—"for driveway purposes"— that the 1946 easement deed had used. Consequently, the driveway continued to be used for the purpose of parking as well as a means of ingress and egress; Wilhite and Smith, still owning the servient estate, respected the dominant owner's right to park in the driveway in accordance with their agreement.

In 1992, appellees bought the property at 600 Elmwood. McNally's suit alleges that, despite the long history of 602 Elmwood residents' parking on the driveway easement, appellees have attempted to interfere with his parking rights by erecting a "no parking" sign, threatening to tow his tenants' automobiles, and telling him that he and his tenants have no right to park on the easement. In response, McNally filed this suit to obtain a declaratory judgment (and injunctive relief if necessary) that he and his tenants at 602 Elmwood have the right to park on the driveway easement. McNally claimed a right to park on the driveway easement under the express terms of the driveway easement and, alternatively, that he had acquired a prescriptive easement to park in the driveway easement area. Appellees counterclaimed, requesting the trial court to declare that the driveway easement was for ingress and egress only and did not include any right to park on the easement; appellees' counterclaim also expressly sought attorney's fees. Appellees filed a motion for summary judgment. The trial court granted appellees' motion and rendered summary judgment declaring that the easement "for driveway purposes" did not include the right to park in the easement area. Although the order granting summary judgment did not address appellees' request for attorney's fees, McNally perfected this appeal out of an abundance of caution.

## I. Jurisdiction

In his first point of error, McNally requests this Court to determine whether the summary judgment is interlocutory and to dismiss the appeal if we find the judgment not to be final. A court of appeals has jurisdiction to consider an appeal only if the judgment is final. *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.1993); *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985). Assumption of appellate jurisdiction over an interlocutory order when not expressly authorized by statute or rule is fundamental error, which results in the dismissal of the appeal. *New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex.1990).

McNally argues in part that the summary judgment is not final and appealable because it fails to dispose of appellees' claim for attorney's fees. In that regard, McNally points out that the judgment does not contain

a "Mother Hubbard" clause or its equivalent.[1] Because the order does not contain a Mother Hubbard clause, it leaves the claim for attorney's fees unadjudicated.

In order to be a final, appealable summary judgment, an order granting summary judgment must dispose of all the parties and all the issues before the court. *Mafrige*, 866 S.W.2d at 591. If a summary judgment appears to be final, as evidenced by the inclusion of language disposing of all claims and parties, it should be treated as final for purposes of appeal. *Inglish v. Union State Bank*, 945 S.W.2d 810, 811 (Tex.1997); *Mafrige*, 866 S.W.2d at 592. When the order contains conflicting indications, finality is to be judged by the trial court's intent as discerned from the language of the decree, the record as a whole, and, occasionally, the parties' conduct. *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 277 (Tex.1996). If the order does not dispose of all issues and all parties, it is interlocutory and not appealable absent a severance. *Mafrige*, 866 S.W.2d at 591. In the context of a summary judgment, there is no presumption that the judgment was intended to dispose of all parties and issues. *Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex.1984).

In the present case, the relevant order fails to dispose of all issues and parties before the court and, therefore, is a non-appealable partial summary judgment. First, the order granting summary judgment does not contain a Mother Hubbard clause or an acceptable equivalent. In their counterclaim, appellees not only sought declaratory relief that the easement language excludes parking on the driveway easement, but also expressly requested attorney's fees. Appellees' motion for summary judgment, however, referred only to the easement claim and did not mention appellees' claim for attorney's fees. The summary judgment did not dispose of appellees' claim for attorney's fees and, therefore, did not dispose of that portion of appellees' counterclaim. Although the order recited that appellees' motion should be "in all things granted," the present context limits that language to the claims asserted in the motion. Because the motion did not request any award of attorney's fees (which the counterclaim sought), the recitation in the order that the motion was "in all things granted" did not address that claim. Accordingly, the order was interlocutory. *See Harris County Appraisal Dist. v. Johnson*, 889 S.W.2d 531, 532–33 (Tex.App.—Houston [14th Dist.] 1994, no writ) ("[B]ecause [appellees'] claim for attorney's fees was not expressly presented to the court in the motion for summary judgment, the order granting the motion does not dispose of all claims asserted in the Original Petition and is therefore interlocutory."); *cf. Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 547 (Tex.1991) (summary judgment interlocutory where trial court expressly reserved question of attorney's fees).

Appellees assert in the alternative that they waived or abandoned their claim for attorney's fees by omitting it from their motion for summary judgment. They contend the omission of the pleaded claim from the motion functioned as a waiver, effectively taking it out of the case, so that the resulting summary judgment was final. This argument is without merit. The Texas Supreme Court views a claim for attorney's fees omitted from a motion for summary judgment as still pending, so that a summary judgment granting the motion is interlocutory and non-appealable. *See New York Underwriters*, 799 S.W.2d at 678–79 ("In the absence of a special statute making an interlocutory order appealable, a judgment must dispose of all issues and parties in the case, including those presented by counterclaim or cross action, to be final and appealable."). Finally, Rule 166a expressly states that claims not adjudicated on the motion for summary judgment are preserved for disposition by the trial court after resolution of the motion for summary judgment. Tex.R. Civ. P. 166a(e). Therefore, the omission of a claim from a motion for summary judgment is not a waiver of that claim.

When claims or parties are not adjudicated in an order, a final judgment can be achieved

---

1. A Mother Hubbard clause usually recites that all relief not expressly granted is denied. *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.1993).

only by severance, dismissal, or nonsuit of the omitted claims or parties. *See Farmer v. Ben E. Keith Co.,* 907 S.W.2d 495, 496 (Tex. 1995) (appellate timetable begins to run only upon signing of written order severing, dismissing, or nonsuiting unadjudicated claims or parties). A severance, dismissal, or nonsuit requires affirmative action taken by the proponent and cannot finalize an interlocutory judgment until a signed, written order of the court severs or dismisses the unadjudicated claims or parties. *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 510 (Tex. 1995). Despite appellees' assertions on appeal, their claim for attorney's fees was not waived by its mere omission from their motion for summary judgment, and the record does not reflect that appellees took any action in the trial court to effect severance or dismissal of that claim. The order granting summary judgment is not a final judgment. Accordingly, I would dismiss the appeal for lack of jurisdiction.

## II. Merits

Moreover, even if we are permitted to address the merits of this appeal, I disagree with the majority's affirmance of the judgment. In his third point of error, McNally contends the trial court erred in granting summary judgment on the basis that "for driveway purposes" in an express easement absolutely excludes parking. McNally claims that, considering the facts and surrounding circumstances at the time of the grant, the language of the easement is ambiguous, thereby rendering summary judgment inappropriate. I agree.

The trial court concluded that McNally's easement is unambiguous because this Court in *Colborn v. Bailey,* 408 S.W.2d 327 (Tex. Civ.App.—Austin 1966, no writ), construed the phrase "for driveway purposes" in an easement to exclude parking. On that basis, the trial court ruled that it was not permitted to look into the "other facts and circumstances regarding the parties' intent." This conclusion is erroneous. While this Court held in *Colborn* that the easement in question did not include parking, that holding was based on the particular facts of the case. Indeed, our opinion quoted the rule that "[i]n

determining the scope of a grant, the language used, the situation of the parties, the purposes of the grant and the nature of the subject matter, may all be considered." *Colborn,* 408 S.W.2d at 329 (quoting *Baer v. Dallas Theater Ctr.,* 330 S.W.2d 214, 219 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.)). Other cases have followed the *Colborn* court's approach to construing easements. *See Kearney & Son v. Fancher,* 401 S.W.2d 897 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); *see also Gerstner v. Wilhelm,* 584 S.W.2d 955 (Tex.Civ.App.—Austin 1979, writ dismissed w.o.j.). Accordingly, *Colborn* does not support the majority's proposition that an easement "for driveway purposes" can never include parking.

In general, easements are interpreted in accordance with the rules applicable to deeds and other written instruments. *Armstrong v. Skelly Oil Co.,* 81 S.W.2d 735, 736 (Tex. Civ.App.—Amarillo 1935, writ ref'd); *Phillips Pipe Line Co. v. Clear Creek Properties, Inc.,* 553 S.W.2d 389, 391 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). Therefore, the intention of the parties is of primary importance. *Kearney,* 401 S.W.2d at 903. Where an easement exists by an express grant, its use must be determined by the terms of the grant considered *in the light of surrounding circumstances. Id.*

These rules of deed interpretation are virtually identical to those for construing contracts. In fact, when reciting rules of construction relating to deed interpretation, courts often cite to contract cases. *See Hall v. Lone Star Gas Co.,* 954 S.W.2d 174, 176 (Tex.App.—Austin 1997, pet. denied); *Stark v. Morgan,* 602 S.W.2d 298, 302–03 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.); *Kuehn v. Wishard,* 452 S.W.2d 5, 9 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.).

Tension between the "surrounding circumstances" rule and the parol evidence rule can be traced back to 1860 in *Hunt v. White,* 24 Tex. 643 (1860), where the supreme court declared that "extrinsic evidence of intention, as an independent fact, is inadmissible." *Id.* at 652. With respect to the surrounding-circumstances rule, however, the court went on to say: "But as he may be supposed to have used language, with reference to the

situation in which he was placed ... the law admits extrinsic evidence...." *Id. See also* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases:. An Encyclopedia of Canons of Construction,* 24 Tex. Tech L.Rev. 1, 15 (1993) (citing *Heirs of Watrous v. McKie,* 54 Tex. 65 (1880) (holding extrinsic evidence admissible to show consideration and purpose of agreement); *Self v. King,* 28 Tex. 552, 554 (1866) (holding that court may read document in light of surrounding circumstances but cannot hear parol evidence on language used in writing)).

The supreme court has subsequently permitted consideration of surrounding circumstances in determining the proper construction of a contract where neither party contended the language was ambiguous. *See City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 519 (Tex.1968). In 1981, in an oil and gas lease dispute, the supreme court sought to eliminate confusion of its *City of Pinehurst* holding as to the consideration of surrounding circumstances, since both parties cited to *City of Pinehurst* as support for their adverse positions. *See Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 732 (Tex.1981). There the court stated:

> Evidence of surrounding circumstances may be consulted. If, in the light of surrounding circumstances, the language of the contract appears to be capable of only a single meaning, the court can then confine itself to the writing. Consideration of the facts and circumstances surrounding the execution of a contract, however, is simply an aid in the construction of the contract's language.

*Sun Oil,* 626 S.W.2d at 731; *see also Birmingham Fire Ins. Co. v. American Nat'l Fire Ins. Co.,* 947 S.W.2d 592, 602 (Tex. App.—Texarkana 1997, writ denied) (analyzing recent precedent and surrounding circumstances).

This Court, in a recent opinion, relied on *Sun Oil* to distinguish between surrounding circumstances and parol evidence for purposes of construing a termination clause in an employment contract. *See Carr v. Christie,* 970 S.W.2d 620, 622–623 (Tex.App.—Austin 1998, pet. denied). We held that the

atypical circumstances leading to execution of the contract were not inadmissible parol evidence, but instead should be considered in determining whether the employee's interpretation was reasonable. *Id.*

In rejecting the appellee's parol evidence argument, this Court (like the supreme court in *Sun Oil* ) quoted Professor Williston's explanation of how courts determine ambiguity:

> In interpreting contracts or clauses set forth in 'clear and unambiguous' language, the courts do not confine themselves to a mere inspection of the document. Before committing themselves, the courts carefully examine the surrounding circumstances, prior negotiations, and all other relevant incidents bearing on the intent of the parties....
>
> Only after a careful and painstaking search of all the factors shedding light on the intent of the parties, only after 'turning signs and symbols into equivalent realities' will the court conclude that the language in any given case is 'clear and unambiguous.'...

*Id.* at 623 (citing 4 Williston on Contracts § 600A (3d ed.1957)) (citations omitted).

Finally, following the trend of the *City of Pinehurst* and *Sun Oil* rulings, the supreme court, while interpreting an insurance contract exclusion provision, recently reiterated the correct rule: "While parol evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists." *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.1998) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996), and *National Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex.1995)). As to when the surrounding circumstances rule is applied, the court stated: "If, *after applying these rules,* a contract is subject to two or more reasonable interpretations, it is ambiguous." *Id.* (emphasis added).

The foregoing decisions are controlling in this case. The trial court was obligated to consider the surrounding circumstances at the time of the grant to determine whether

"for driveway purposes" was ambiguous. Because it did not, the court erred.

The meaning of McNally's easement rests on interpreting "for driveway purposes" in light of the surrounding circumstances at the time of the grant (in addition to the language of the grant itself). Surrounding circumstances include those existing at the time of execution of the writing, but do not include subsequent conduct of the parties. *Sun Oil,* 626 S.W.2d at 732. Various situations may qualify as surrounding circumstances, depending on the facts of the particular case. In *Sun Oil,* for example, the supreme court considered as surrounding circumstances the bargaining position of the lessors due to the strategic location of their property, the experience level of the attorney drafting the lease, and the economic value of gas at the time of execution. *Sun Oil,* 626 S.W.2d at 732. In *Balandran,* the court considered as surrounding circumstances the promulgation of the policy form, including testimony from a Board of Insurance hearing and statements from the Board of Insurance to the committee revising the form. *Balandran,* 972 S.W.2d at 741–42. This testimony described the coverage included in the prior policy form and included statements that the purpose of the reformation was not to make substantive changes to the form. *Id.* In *Christie,* this Court considered as surrounding circumstances the atypical conditions existing at the time the employment agreement was executed. *Christie,* 970 S.W.2d at 622–623. These circumstances included that the appellee purchased a business at a reduced price in exchange for the appellee's promise to continue the appellant's employment. *Id.*

In the context of easement interpretation, surrounding circumstances have included the location of the easement on the property and that of the abutting streets at the time of the grant. *Kearney,* 401 S.W.2d at 903. From these circumstances, the *Kearney* court concluded that there was no necessity to burden the servient tenement with an easement for ingress and egress when other access to the abutting streets was easily available. Likewise, the *Colborn* court considered the prior use of the easement (which did not include parking), the burden on the servient tenement (property value was reduced), ownership of the two tracts at the time of the easement, and that there was no driveway on the dominant tenement. *Colborn,* 408 S.W.2d at 328–329.

With respect to McNally's easement, I believe the appropriate surrounding circumstances include *at least* the fact that the actual use of the easement at the time of the grant included parking (similar to *Balandran,* where the prior policy form included the coverage claimed by the insured). In addition, other facts might also be subject to consideration: (1) the purpose of the 1979 grant was to effect the prior usage of the 1946 grant, which apparently had included parking for more than 30 years (similar to the purpose of the policy reformation in *Balandran*); (2) the owner of the dominant estate purchased the property with the understanding that it included parking and therefore the property was more marketable (similar to the economic conditions of the oil and gas market in *Sun Oil*); (3) the 1979 grant was prepared by a "scrivener" (similar to the attorney's experience level in *Sun Oil*); (4) the location and physical layout of the property, for example, the steep grade in front of the dominant estate prevented direct access to 602 Elmwood from the street (similar to location of the easement and abutting streets in *Kearney*); and (5) parking on the easement in no way burdens the servient estate (in *Kearney* and *Colborn,* the evidence showed just the opposite to be true).

It is common knowledge that driveways are often used for parking; I therefore believe the relevant phrase—"for driveway purposes"—is itself ambiguous even without regard to surrounding circumstances. A consideration of the surrounding circumstances not only reinforces that conclusion, but categorically settles it. Accordingly, I believe the granting of summary judgment was erroneous because the proper construction of the instrument involved a fact issue. *See Columbia Gas,* 940 S.W.2d at 589; *Christie,* 970 S.W.2d at 622.

I would dismiss the appeal for lack of jurisdiction. If this Court has jurisdiction, I

would reverse the summary judgment and remand the cause to the trial court.